621 A.2d 132

**DOX PLANKS OF NORTHEASTERN PENNSYLVANIA, A DIVISION OF ROMANI INDUSTRIES**

v.

**OHIO FARMERS INSURANCE COMPANY and Tri–State Asphalt Corp., Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 18, 1992.

Filed Feb. 17, 1993.

312

Jerry W. Wienand, Pittsburgh, for appellants.

David Romani, Cresson, for appellee.

Before ROWLEY, President Judge, and JOHNSON and HESTER, JJ.

ROWLEY, President Judge:

Ohio Farmers Insurance Company (hereinafter "appellant Ohio") and Tri–State Asphalt Corporation (hereinafter "Tri–State") appeal from the judgment rendered against them, and in favor of Dox Planks (hereinafter "appellee"), in this breach of contract and surety bond action brought by appellee Dox Planks to recover for concrete road barriers it had supplied to appellant Tri–State in connection with a Pennsylvania Department of Transportation highway construction contract which appellant Tri–State had been awarded. Appellants contend that the trial court erred in the following respects: (1) by making its factual finding that a sale rather than a lease of the concrete barriers had occurred between the parties, and in making its corresponding legal conclusion that the concrete barricades in question were "materials substantially used" rather than "capital equipment," within the meaning of the instant construction bond, (2) by failing to take into consideration an alleged duty on the part of appellee to mitigate its damage, (3) by finding that appellants owe interest to appellee as of October 31, 1989, and (4) by admitting certain exhibits over the objection of defense counsel. Appellee asserts that the trial court's factual findings, legal conclusions and evidentiary rulings are all well-supported by the record and the law. Following a careful review of both, we affirm.

The factual background of this case is as follows. In preparation for the submission of its bid for a Pennsylvania Department of Transportation (hereinafter "PennDOT") highway paving contract, appellant Tri–State, by its agent Charles

Taylor, contacted appellee Dox Planks, a concrete product supplier, to inquire about the cost of pre-cast concrete barricades to be used on the highway construction project. Mr. John Romani, as owner and chief executive officer of appellee Dox Planks, quoted appellant Tri–State a price of $15.25 per lineal foot for the *sale* of its pre-cast concrete barrier. Mr. Taylor, who was in charge of handling the bidding on the barrier segment of the project, testified that he had received appellee's quotation, and that on the night the bids were entered on the project in Harrisburg, PA, he put all the barrier *purchase* quotations on a spreadsheet which revealed that appellee was the lowest bidder [1].

When appellant Tri–State was awarded the paving contract by the state, appellee Dox Planks was informed by appellant Tri–States's estimator, Mr. Taylor, that appellee Dox Planks would be the sub-contractor on the project and that a John McDevitt would be purchasing the barriers directly from the job site. Thereafter, Mr. McDevitt issued purchase order Number 10614, dated August 10, 1989, and purchase order Number 11303, dated October 31, 1989, to appellee Dox Planks for the barriers which would be used by appellant Tri–State on its highway paving project. The testimony at trial revealed that Mr. McDevitt had been duly authorized, both by Mr. Taylor, and by the Vice–President of Construction, Mr. George Sipe, to order the materials on behalf of appellant Tri–State, at the quoted sales price, for this project. The materials were then delivered to appellant Tri–State.

1. It should be noted at this juncture that appellant Tri–State maintains that the concrete barrier transaction between it and appellee Dox Planks was a *lease*, rather than a purchase. The owner and chief executive officer of appellant Tri–State claims to have had discussions with Mr. Romani of appellee Dox Planks in which they agreed, prior to the bidding process, that appellee Dox Planks would *rent* the barriers to appellant Tri–State for $5.00 per lineal foot, plus the costs of transporting the barriers from the Tri–State project to the next project designated by appellee Dox Planks within a 200–mile radius. Because this testimony was in direct contradiction to that of Mr. Romani, and was highly suspect in light of the testimony of all other witnesses, the trial court, as fact-finder, was required to resolve the discrepancy in testimony with a credibility determination. The discrepancy was resolved in favor of Mr. Romani and appellee Dox Planks.

Appellee Dox Planks claims that, in the normal course of business, it mailed invoices for payment to appellant Tri–State and that when payment was not received, Mr. Romani phoned Mr. McDevitt to inquire as to the reason for non-payment [2]. After researching the inquiry, Mr. McDevitt advised Mr. Romani that the checks had been written by the accounting department but remained unsigned due to the unwillingness of appellant Tri–State's owner, Mr. Straub, to pay the bills. At this point, Mr. Romani claims he had his one and only discussion with Mr. Straub, wherein he was told that "he [Mr. Straub] was not concerned" about the bills and would not be submitting payment thereof to appellee Dox Planks. (Reproduced Record, p. 27a). Whereupon, Mr. Romani informed Mr. Straub that appellee Dox Planks would file a lien against him, the Pennsylvania Department of Transportation, and appellant Ohio for payment. The lien was then filed by appellee.

■ At the bench trial held in this case, the chief factual issue for the trial court to resolve was whether, from the supplier's point of view, the concrete barriers were an item reasonably expected to be consumed or substantially consumed in performance of the project. *United States for the Use of Sunbelt Pipe v. United States Fidelity and Guaranty Company*, 785 F.2d 468 (4th Cir.1986). If they were, under the relevant case law, the supplies were "materials furnished" within the meaning of the bond in question and the Public Work Contractors Bond Law of 1967, 8 P.S. § 195, such that the bond covered the amounts owed by appellant Tri–State to appellee Dox Planks for the barriers. If, under that same law, the barriers could reasonably be expected to be reused on other non-government jobs, appellee Dox Planks could not recover on the bond because the barriers would not be considered "materials furnished," but rather, would be deemed "capital equipment."

**2.** Appellant Tri–State claims that it never received these invoices and therefore, argues on appeal that it was error for the trial court to introduce the invoices into evidence even for the limited purpose of establishing that they were mailed.

Following considerable testimony, the trial court found as a fact that the pre-cast concrete barriers supplied to appellant Tri–State by appellee Dox Planks were of such a nature that appellee Dox Planks, as supplier, could reasonably have expected that they would be substantially used up in the project underway inasmuch as they were made specifically according to PennDOT requirements and were indispensable to the prosecution of the project. *Commonwealth v. Natural Union Fire Insurance Company,* 434 Pa. 235, 252 A.2d 593 (1969). As such, the trial court made the conclusion of law that the barriers were "materials furnished," under the terms of the bond and therefore, rendered the judgment that appellants Tri–State and Ohio were jointly and severally liable to appellee Dox Planks for $36,662.32, plus interest at the rate of 6% per annum. Appellant's primary claim of trial court error is that this factual finding, and its corresponding conclusion of law, are against the *weight* of the evidence.

In addressing these claims, we note initially that:

"findings of a trial judge sitting without a jury carry the same weight as a verdict, and th[e appellate courts] will not disturb those findings on appeal absent an error of law or an abuse of discretion. [citation omitted]. We will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the [trial] court's determination was manifestly erroneous, arbitrary, and capricious or flagrantly contrary to the evidence. [citation omitted]."

*Ecksel v. Orleans Construction Co.,* 360 Pa.Super. 119, 133, 519 A.2d 1021, 1026 (1987). Furthermore:

"A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict, but contends, nevertheless, that the verdict is against the weight of the evidence. Whether a new trial should be granted on grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge, and will not be reversed on appeal unless there has been an abuse of discretion. [citations omitted]. The test is not

whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail. [citations omitted]."

*Commonwealth v. Taylor,* 324 Pa.Super. 420, 425, 471 A.2d 1228, 1230 (1984). To be entitled to a new trial, an appellant challenging the trial court's verdict as against the weight of the evidence, must establish "from the record that the [fact-finder's] verdict was so contrary to the evidence as to shock one's sense of justice . . ." *Commonwealth v. Barnhart,* 290 Pa.Super. 182, 185, 434 A.2d 191, 192 (1981).

Despite a careful reading of the entire record, we are not shocked by the trial court's factual findings and legal conclusions. Rather, we conclude that the trial court's well-reasoned opinion more that adequately discusses the relevant law and applies it correctly to the facts of this case. Its determinations are well-supported by the testimony presented and the relevant case law. All of the testimony, except for Mr. Straub's, supports the trial court's conclusion that a sale of the barriers was intended by all parties at the time the contract was effected. The mere fact that the trial court resolved a discrepancy in the testimony against Mr. Straub is not reversible error. Moreover, the record reveals that "Dox Planks elucidated its reasonable and good faith expectation at the time of delivery that the materials furnished would be substantially used up on the project" (Trial Court Opinion, 3/10/92, p. 10) and that the precast barriers were of no value to appellant Tri–State after completion of this project. (Reproduced Record, p. 149a). Therefore, we affirm the trial court's determination that a sale rather than a lease occurred in this case and that both appellant Tri–State and its surety are liable to appellee Dox Planks in this case because the supplies in question were "materials furnished" as that term is understood in the context of a construction bond under the Public Work Contractors Bond Law of 1967, 8 P.S. § 195.

After careful review, we also approve the trial court's adequate and correct discussion and disposition of the three

remaining issues raised above. First, we agree with the trial court's conclusion that under the circumstances of this case, appellee Dox Planks was not obliged to mitigate its damages. As the trial court stated in its opinion, "[i]n order to determine whether mitigation is appropriate, the test to be applied to plaintiff[/appellee]'s conduct is whether the conduct taken in response to the defendant[/appellant's] breach was reasonable." (Trial Court Opinion, 3/10/92, p. 5). *See: Toyota Indust. Trucks U.S.A., Inc. v. Citizens National Bank of Evans City,* 611 F.2d 465 (3d Cir.1979). Moreover, "... an injured party is not obligated to mitigate damages when both he and the liable party had equal opportunity to do so." *Ecksel v. Orleans Construction Co.,* 360 Pa.Super. 119, 133, 519 A.2d 1021, 1028 (1987). Because appellant Tri–State had already received the pre-cast concrete barriers, and they were in current use on the highway project at the time appellant Tri–State breached the contract by non-payment, appellee Dox Planks was precluded from taking steps to avoid loss on the breach of the contract. Therefore, the trial court was correct in concluding that "[appellee] fulfilled its obligation by law under the contract, and to impose an additional duty upon it in light of the circumstances of the breach [would have been] unreasonable." (Trial Court Opinion, 3/10/92, p. 6).

■ Next, we agree with the trial court that "[i]n contract cases, a successful plaintiff is entitled to prejudgment interest at the statutory rate as a matter of right, and it is calculated from the time the debt became payable." (Trial Court Opinion), 3/10/92, p. 7). *See: Fernandez v. Levin,* 519 Pa. 375, 379–380, 548 A.2d 1191, 1193 (1988). In the instant case, appellee Dox Planks "last performed labor and furnished materials pursuant to its contract with [appellant] Tri–State on October 31, 1989, [and on that date, appellant Tri–State was aware of the total amount it owed to appellee Dox Planks.] Accordingly, the [trial] court established that date as the time upon which the establishment of the legal rate of interest at six (6) percent per annum should accrue." Despite appellants' arguments to the contrary, we find no trial court

error in requiring appellants to pay interest, as ordered by the trial court [3].

■   Finally, we concur with the trial court's conclusion that Exhibits 4, 5 and 6 were properly admitted after testimony by Mr. Romani that the invoices were prepared in the normal course of appellee Dox Plank's business and that he had personal knowledge that they were sent to appellant Tri–State.   These exhibits were admitted in a bench trial by the trial court for the sole purpose of establishing that they were, in fact, prepared.   As the trial court stated in its opinion, "[t]here was no definable or ascertainable motive for falsification under the circumstances, and therefore the exhibits were admitted as sufficiently reliable evidence."   (Trial Court Opinion, 3/10/92, p. 5).   See also: U.S. for Use of Automatic Sprinkler Corp. of America v. Merritt–Chapman & Scott Corp., 305 F.2d 121 (3d Cir.1962), concerning the admission of these documents to prove the required 90–day notice as required to maintain an action on a payment bond.   We conclude that the admission of the exhibits was entirely proper.

Accordingly, for all of the above-stated reasons, we affirm the order of the trial court finding appellants jointly and severally liable to appellee Dox Planks in the amount of $36,662.32, plus interest of 6% per annum from October 31, 1989.

Judgment affirmed.

3.   The mere fact that initially, appellee Dox Planks' attorney drafted a letter asking the bonding company for $3,677.14 more than is now due is of no moment.   At the time the letter was written, there was some confusion between the two companies' accounting departments as to whether a third, much smaller, bill had been paid by appellant Tri–State to appellee Dox Planks.   Because appellee Dox Planks discovered that the third bill had been paid, it is now seeking recovery only for the two unpaid bills, amounting to $36,662.32.   Appellant Tri–State was aware of the amounts it had paid and the amounts that it still owed to appellee Dox Planks as of October 31, 1989 and consequently, appellant Tri–State committed a breach of contract to pay a definite sum of money such that it must now pay interest to appellee Dox Planks on that sum.