629 A.2d 974

**Robert K. WOODIN and Alice D. Woodin, Appellants,**

**v.**

**J.C. PENNEY COMPANY, INC., Appellee,**

**v.**

**REVCO, INC., A DIVISION OF RHEEM MANUFACTURING CO., Admiral Industries, Inc., A Division of Magic Chef, Inc., Hardwick, Maytag Corp. and White Consolidated Industries, Inc.—Freezer Division (Formerly Franklin Manufacturing Co.), A Division of White Consolidated Industries, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued April 13, 1993.

Filed Aug. 6, 1993.

Christian T. Mattie, III, Eldred, for appellants.

Robert S. Garrett, Pittsburgh, for appellees.

Before WIEAND, POPOVICH and HESTER, JJ.

WIEAND, Judge:

In this action to recover fire damage attributed by plaintiffs to a defectively manufactured freezer cord, the trial court set aside a verdict for the plaintiffs and entered judgment n.o.v. in favor of the defendant seller and manufacturer. Plaintiffs appealed. We affirm.

Early in 1979, Robert and Alice Woodin purchased a chest type freezer from J.C. Penney Company, Inc. The freezer had been manufactured by White Consolidated Industries, Inc. It was delivered by Penney's employees and placed in the northeast corner of the utility room located on the first floor of the Woodin home. The utility room was approximately eighteen (18) feet wide and eight (8) feet long, had wood panelled walls and a plywood floor finished with Armstrong linoleum. The back of the freezer was placed along the east wall of the room, and the left end of the unit was positioned along the north wall. Only two and one-half (2½) feet of unoccupied space existed between the right end of the freezer and the south wall of the room. Because the power cord, which extended from the unit's compressor in the back, left corner of the freezer, was of insufficient length, an extension cord was used to connect the freezer to the electrical outlet located at the southeast corner of the room.

For more than eight years the freezer operated continuously without complaint. On December 2, 1987, the Woodins left their home at or about 9:30 a.m. A fire was reported about noon. Alleging that the fire had been caused by a defect in the power cord, the Woodins filed suit against J.C. Penney, which, in turn, joined White, the manufacturer, as an additional defendant.

At trial, the plaintiffs relied on the testimony of expert witnesses that the fire had been caused by a short circuit in

the power cord near the unit's compressor. The defendants contended, however, that the fire had not originated in the area of the compressor and that it could not have been started by a short circuit in the power cord. A jury returned a verdict for the plaintiffs for $67,850.00, the amount of the damages stipulated by the parties. The trial court overruled the jury's verdict because there was an absence of evidence identifying any defect in the cord of the freezer and because the verdict, therefore, could be based on nothing but speculation.

The standard of review on appeal was recently stated by the Supreme Court in *Moure v. Raeuchle,* 529 Pa. 394, 604 A.2d 1003 (1992), as follows:

> In reviewing a motion for judgment n.o.v., "the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Broxie v. Household Finance Company,* 472 Pa. 373, 380, 372 A.2d 741, 745 (1977). *See also, Metts v. Griglak,* 438 Pa. 392, 264 A.2d 684 (1970) and *Gonzalez v. United States Steel Corp.,* 484 Pa. 277, 398 A.2d 1378 (1979). Moreover, [a] judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. *See Atkins v. Urban Redevelopment Authority of Pittsburgh,* 489 Pa. 344, 414 A.2d 100 (1980) and *Stewart v. Chernicky,* 439 Pa. 43, 266 A.2d 259 (1970).

*Id.* at 402, 604 A.2d at 1007. See also: *Lowry v. State Farm Insurance Companies,* 392 Pa.Super. 77, 572 A.2d 700 (1990), *allocatur denied,* 527 Pa. 601, 589 A.2d 692 (1990).

 It is well settled that in order to recover on a theory of strict product liability, a plaintiff must prove that (1) the product was defective; (2) the defect was the proximate cause of the plaintiff's injuries; and (3) the defect existed at the time it left the manufacturer's control. *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 93–94, 337 A.2d 893, 898 (1975); *Roselli v. General Electric Co.,* 410 Pa.Super. 223, 229, 599 A.2d 685, 688 (1991), *allocatur granted,* 530 Pa. 645, 607 A.2d

255 (1992), *appeal discont'd,* January 11, 1993. Generally, a plaintiff will produce direct evidence of a product's defective condition. In those cases where the plaintiff is unable to prove the precise nature of the product's defect, however, he may, in some cases, rely on the "malfunction theory" of product liability. *Rogers v. Johnson & Johnson Products, Inc.,* 523 Pa. 176, 182, 565 A.2d 751, 754 (1989). The malfunction theory allows the plaintiff to use circumstantial evidence to establish a defective product. In *Rogers v. Johnson & Johnson Products, Inc., supra,* the court stated:

> [The malfunction theory] permits a plaintiff to prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction. [The plaintiff is relieved] from demonstrating precisely the defect yet it permits the trier-of-fact to infer one existed from evidence of the malfunction, of the absence of abnormal use and of the absence of reasonable, secondary causes.

*Id.* (citations omitted). Although proof of a specific defect is not essential to establish liability under this theory, the plaintiff cannot depend upon conjecture or guesswork. "The mere fact that an accident happens, even in this enlightened age, does not take the injured plaintiff to the jury." *Stein v. General Motors Corp.,* 58 D. & C.2d 193, 203 (Bucks 1972), *aff'd,* 222 Pa.Super. 751, 295 A.2d 111 (1972).

The freezer in the instant case had functioned flawlessly for more than eight (8) years. Appellants testified that they had at no time observed wearing or deterioration of the power cord. In *Kuisis v. Baldwin–Lima–Hamilton Corp.,* 457 Pa. 321, 319 A.2d 914 (1974), the Supreme Court stated as follows:

> We recognize that, as a general rule, "prolonged use of a manufactured article is but one factor, albeit an important one, in the determination of the factual issue whether [a defect in design or] manufacture proximately caused the harm." The age of an allegedly defective product must be considered in light of its expected useful life and the stress to which it has been subjected. In most cases, the weighing of these factors should be left to the finder of fact. But in certain situations the prolonged use factor may loom so

large as to obscure all others in a case. Professor Prosser has summarized the position generally taken by the courts on this question: "[Lapse of time and long continued use] in itself is not enough, even when it has extended over a good many years, to defeat the recovery where there is satisfactory proof of an original defect; but when there is no definite evidence, and it is only a matter of inference from the fact that something broke or gave way, the continued use usually prevents the inference that the thing was more probably than not defective when it was sold."

*Id.* at 336, 319 A.2d at 923 (citations omitted).

■ Here, there was no evidence to identify any defect in the freezer cord at the time the freezer was sold. Thus, the occurrence of the fire alone did not give rise to an inference of a defect at the time of manufacture. Richard Brugger, a professional engineer, expressed the opinion that the cord was "not adequate."[1] However, he conceded that he had never examined an undamaged freezer cord, and when the damaged cord which had been attached to appellants' freezer was shown to him, he was unable to identify any defect therein. His opinion, he said, was based on evidence that a short circuit had occurred in the power cord, but he conceded that short circuits can and frequently do occur during fires because the intense heat generated by an external fire destroys wire insulation.

■ Under these circumstances, we agree with the trial court that the evidence was insufficient to prove a defect in the cord at the time of manufacture and sale of the freezer unit. Where, as here, the freezer had functioned flawlessly during eight (8) years of continuous operation and plaintiffs' evidence was unable to identify any specific defect therein, the jury could not properly infer the existence of a defect from the occurrence of a fire. The jury's verdict, therefore, as the trial court appropriately observed, could only be a product of speculation. There was no evidence to support a finding that the freezer was defective when sold.

1. The power cord attached to appellants' freezer was comprised of three 18 gauge wires, each of which consisted of 16 individual strands of wire twisted and held together by insulation.

■■ In making this determination, we have not considered the serious discrepancies in the testimony of plaintiffs' experts who sought to place the start of the fire in the northeast corner of the utility room near the freezer cord and unit compressor. We have examined the testimony offered by these witnesses on direct and cross-examination and agree that the credibility of the opinions which they expressed was largely destroyed by inconsistencies and weaknesses, including burn patterns suggesting that the fire had started in the southeast corner of the room where the electrical outlet and extension cord were located.[2] Credibility issues, however, were for the jury, and the trial court could not base a judgment n.o.v. on its disbelief of the opinions expressed by plaintiffs. witnesses.[3]

Judgment affirmed.

2. Plaintiffs' experts were also unable to explain, if the fire had started in the northeast corner of the room where the compressor and cord were located, why the paint on the freezer above the compressor remained intact and without damage after the fire. ·

3. A trial court may award a new trial on grounds that a verdict is contrary· to the weight of the evidence. See: *Dox Planks of Northeastern Pennsylvania, A Division of Romani Industries v. Ohio Farmers Insurance Co.*, 423 Pa.Super. 311, 621 A.2d 132 (1993); *Dierolf v. Slade*, 399 Pa.Super. 9, 581 A.2d 649 (1990). Such an argument was made by the defendant-appellees in the trial court, but that court, having entered a judgment n.o.v., did not reach and consider the motions for new trial.