639 A.2d 1204

**Wilma DUCKO and Albert Ducko, her husband, Appellants,**

v.

**CHRYSLER MOTORS CORPORATION and Reedman Corp., Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 19, 1994.

Filed April 6, 1994.

48

Harry J. Oxman, Philadelphia, for appellants.

Keith D. Heinold, Philadelphia, for appellees.

Before WIEAND, HUDOCK and SAYLOR, JJ.

WIEAND, Judge.

In this product liability action, the sole issue is the sufficiency of the circumstances surrounding a malfunction of an automobile to establish prima facie the existence of a manufacturing defect. The trial court determined the evidence to be insufficient and entered summary judgment in favor of the manufacturer. After careful review, we reverse.

■ An order granting summary judgment is appropriate when a review of all the interrogatories, affidavits and depositions of record indicates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Buckno v. Penn Linen & Uniform Service, Inc.*, 428 Pa.Super. 563, 565, 631 A.2d 674, 675 (1993). However, "[a]n entry of summary judgment may be granted only in cases where the right is clear and free of doubt." *Musser v. Vilsmeier Auction Co., Inc.*, 522 Pa. 367, 370, 562 A.2d 279, 280 (1989). When considering whether summary judgment is proper, the record must be examined in the light most favorable to the non-moving party, with all doubts resolved against the moving party. *Denlinger, Inc. v. Dendler*, 415 Pa.Super. 164, 170, 608 A.2d 1061, 1064 (1992).

On November 23, 1984, Wilma Ducko was driving a newly purchased, 1985 Chrysler Fifth Avenue southwardly on the Atlantic City Expressway, in New Jersey, when the vehicle suddenly jerked to the right. Although she tried with all her strength to straighten the course of her vehicle, she said, the steering felt as though it had locked. When she attempted to apply the brakes, they also failed to respond. The vehicle, which had been moving at a speed of 55 m.p.h., travelled across the highway, down an embankment and into a group of trees. Ducko received serious injuries, including a broken back, and the vehicle was totalled. Prior to the accident, the vehicle had been driven 1,655 miles; it had been purchased less than two months before. The road surface at the time of the accident was dry.

An expert employed by the plaintiffs found no specific defect in the vehicle. He opined that Mrs. Ducko's accident

had been caused by a transient malfunction of the system providing power to the steering and brakes. Chrysler's expert, however, observed that both steering and brakes were operational, and he found no abnormalities in any of the car's systems. He said that at a speed of 55 m.p.h. even a temporary power failure would not have rendered the steering uncontrollable. He expressed the opinion that the accident was a result of operator error.

When advancing a theory of strict product liability, a plaintiff has the burden of showing that the product was defective, that the defect was the proximate cause of his or her injuries and that the defect existed at the time the product left the manufacturer. *Woodin v. J.C. Penney Co., Inc.,* 427 Pa.Super. 488, 490, 629 A.2d 974, 975 (1993); *Vernon v. Stash,* 367 Pa.Super. 36, 48, 532 A.2d 441, 447 (1987); *Swartz v. General Elec. Co.,* 327 Pa.Super. 58, 66, 474 A.2d 1172, 1176 (1984). In certain cases of alleged manufacturing defects, however, the plaintiff need not present direct evidence of the defect. When proceeding on a malfunction theory, the plaintiff may "present a case-in-chief evidencing the occurrence of a malfunction and eliminating abnormal use or reasonable, secondary causes for the malfunction." *O'Neill v. Checker Motors Corp.,* 389 Pa.Super. 430, 435, 567 A.2d 680, 682 (1989). See also: *Knight v. Otis Elevator Co.,* 596 F.2d 84, 89 (3d Cir.1979). From this circumstantial evidence, a jury may be permitted to infer that the product was defective at the time of sale. *Vernon v. Stash, supra* 367 Pa.Super. at 48, 532 A.2d at 448. This was summarized in *Woodin v. J.C. Penney Co., Inc., supra,* as follows:

> Generally, a plaintiff will produce direct evidence of a product's defective condition. In those cases where the plaintiff is unable to prove the precise nature of the product's defect, however, he may, in some cases, rely on the "malfunction theory" of product liability. *Rogers v. Johnson & Johnson Products, Inc.,* 523 Pa. 176, 182, 565 A.2d 751, 754 (1989). The malfunction theory allows the plaintiff to use circumstantial evidence to establish a defective prod-

uct. In *Rogers v. Johnson & Johnson Products, Inc., supra,* the court stated:

> [The malfunction theory] permits a plaintiff to prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction. [The plaintiff is relieved] from demonstrating precisely the defect yet it permits the trier-of-fact to infer one existed from evidence of the malfunction, of the absence of abnormal use and of the absence of reasonable, secondary causes.

*Id.* (citations omitted). Although proof of a specific defect is not essential to establish liability under this theory, the plaintiff cannot depend upon conjecture or guesswork. "The mere fact that an accident happens, even in this enlightened age, does not take the injured plaintiff to the jury." *Stein v. General Motors Corp.,* 58 D. & C.2d 193, 203 (Bucks 1972), *aff'd,* 222 Pa.Super. 751, 295 A.2d 111 (1972).

*Id.,* 427 Pa.Super. at 492, 629 A.2d at 975–976. The malfunction theory, thus, does not relieve the burden of establishing a defect. *Harkins v. Calumet Realty Co.,* 418 Pa.Super. 405, 418, 614 A.2d 699, 706 (1992). See also: *Sochanski v. Sears, Roebuck & Co.,* 689 F.2d 45, 50 (3d Cir.1982). However, "[t]he malfunction itself is circumstantial evidence of a defective condition, . . ." *D'Antona v. Hampton Grinding Wheel Co., Inc.,* 225 Pa.Super. 120, 124, 310 A.2d 307, 309 (1973). When a party relies on the malfunction of a product to prove that it was defective, testimony identifying the exact nature of the alleged defect is not essential. "Although it is helpful for a plaintiff to have direct evidence of the defective condition which caused the injury or expert testimony to point to that specific defect, such evidence is *not* essential in a strict liability case based on § 402A [of the Restatements (Second) of Torts]." *Cornell Drilling Co. v. Ford Motor Co.,* 241 Pa.Super. 129, 136, 359 A.2d 822, 825 (1976) (emphasis in original). See also: *Kuisis v. Baldwin–Lima–Hamilton Corp.,* 457 Pa. 321, 329, 319 A.2d 914, 920 (1974). Where the

alleged malfunction occurs shortly after the product has been delivered to the user, the inference that the defect originated with the manufacturer is stronger. *Cornell Drilling Co. v. Ford Motor Co., supra* 241 Pa.Super. at 140, 359 A.2d at 827.

In *MacDougall v. Ford Motor Co.,* 214 Pa.Super. 384, 257 A.2d 676 (1969), the plaintiff had purchased her car a little more than a month before and had driven the vehicle only one hundred and forty-three (143) miles prior to the accident. According to the plaintiff's testimony, while driving on the Pennsylvania Turnpike, at approximately fifty (50) or sixty (60) miles per hour, the steering on her vehicle failed to respond, and her car veered off the road and onto the berm. The plaintiff's expert examined the vehicle and observed irregularities in the steering mechanism which, he said, might have been the cause of the problem described by the plaintiff. He was unable, however, to confirm positively that the irregularities had been the cause of the accident. After the close of all evidence, the jury returned a verdict in favor of the plaintiff. The defendant's motion for judgment n.o.v. was denied by the trial court. On appeal, the defendant argued that the plaintiff had not shown any specific mechanical defect which had caused the accident. The Superior Court, concluding that the plaintiff had met her burden of proof through circumstantial evidence, said, "proof of the specific defect in construction or design causing a mechanical malfunction is not an essential element in establishing breach of warranty." *Id.* at 389, 257 A.2d at 679. Therefore, the Court held that Mrs. MacDougall's testimony of the bizarre steering action, prior to and at the time of the accident, "establishe[d] a mechanical malfunction in the absence of abnormal use which prevented her from maintaining control of the car." *Id.* at 391, 257 A.2d at 680. As to the significance of her expert's opinion, the Court said, "[A]lthough proof of specific steering defects was not a prerequisite to establishing liability, we note that [plaintiff's expert's] testimony ... lends definite *additional* support to this inference." *Id.* at 391–392, 257 A.2d at 680 (emphasis added).

Later, in *Agostino v. Rockwell Mfg. Co.,* 236 Pa.Super. 434, 345 A.2d 735 (1975), the Superior Court again considered the

burden of proof required under the malfunction theory. In that case, the plaintiff had purchased a power saw equipped with a blade guard less than a month before his injury and had used it only ten times. On the day of the accident he successfully cut three boards and was attempting to rest the saw on a work bench when the saw blade caught his trousers and cut his thigh. The plaintiff testified that the blade guard had appeared to be jammed. At trial, the court granted a compulsory non-suit in favor of the defendant, holding that there was no evidence to establish that the saw had malfunctioned. The Superior Court reversed and remanded for a new trial. Because the plaintiff had said that the blade guard appeared to have been jammed, the Court held that "[t]he jury could have properly inferred from [the plaintiff's] testimony that the [blade] guard did not function properly." *Id.* at 444, 345 A.2d at 740.

In *Brill v. Systems Resources, Inc.*, 405 Pa.Super. 603, 592 A.2d 1377 (1991), the Superior Court again considered a plaintiff's evidentiary burden under the malfunction theory. There the plaintiff had been injured when the chair in which he had been sitting suddenly collapsed. At trial the plaintiff offered his own testimony concerning the events of his fall and the testimony of an eyewitness. The defendant, on the other hand, presented an expert who had examined the chair and opined that it was not defective. He concluded that the accident must have been the result of abnormal use by the plaintiff. The trial court refused to instruct the jury on the malfunction theory, and the jury returned a verdict for the defendant. On appeal, the Superior Court reversed and remanded for a new trial. Because the jury could have inferred a defect from the plaintiff's testimony, the Court held that a jury instruction on the malfunction theory was required. It said:

> Thus, the record contains conflicting evidence regarding abnormal use. The determination of which version of events to credit, of course, was for the jury. *See Commonwealth v. Paquette*, 451 Pa. 250, 301 A.2d 837 (1973) (credibility determinations within exclusive province of finder of

fact). If the jury chose to credit appellant's testimony, it could have found that there was no abnormal use or other reasonable secondary cause for the chair to collapse.... We therefore conclude that appellant was entitled to have the jury instructed that if it found no abnormal use, it could find that the chair malfunctioned.

*Id.* 405 Pa.Super. at 607–608, 592 A.2d at 1379.

■ In granting appellee's motion for summary judgment in the instant case, the trial court relied upon the deposition testimony and reports submitted by Chrysler's expert. This was error. Mrs. Ducko's testimony of the erratic performance of the vehicle's steering and braking systems, under the circumstances of this case, was sufficient to make out a prima facie case of a manufacturing defect in the vehicle. The issue of strict liability, therefore, was a disputed issue for the jury. Although a jury, after considering the testimony of appellee's expert witnesses, may find that the vehicle was not defective and that the accident was caused by operator error, it was improper for the trial court to make such a determination summarily and as a matter of law.

Our decision, as we have attempted to demonstrate, is compelled by prior decisions of the Superior Court. It is also consistent with decisions in other jurisdictions which have adopted the malfunction theory and allow proof of a defectively manufactured product by circumstantial evidence. See, e.g.: *Sochanski v. Sears, Roebuck & Co.,* 621 F.2d 67 (3d Cir.1980); *Stewart v. Ford Motor Co.,* 553 F.2d 130 (D.C.Cir. 1977); *Higgins v. General Motors Corp.,* 287 Ark. 390, 699 S.W.2d 741 (1985); *Wakabayashi v. Hertz Corp.,* 66 Haw. 265, 660 P.2d 1309 (1983); *Gillespie v. R.D. Werner Co., Inc.,* 71 Ill.2d 318, 17 Ill.Dec. 10, 375 N.E.2d 1294 (1978); *Stackiewicz v. Nissan Motor Corp. in U.S.A.,* 100 Nev. 443, 686 P.2d 925 (1984); *Moraca v. Ford Motor Co.,* 66 N.J. 454, 332 A.2d 599 (1975); *Brownell v. White Motor Corp.,* 260 Or. 251, 490 P.2d 184 (1971).

The order of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion. Jurisdiction is not retained meanwhile.