Alfonce A. BARNISH and Billie M.
Bozic, His Wife, Appellants

v.

KWI BUILDING COMPANY; United
McGill Corporation; McGill Airclean
Corporation; Fenwal Safety Systems,
Inc. and GreCon Electronics, Inc., Ap-
pellees.

Sandy L. Bussard and Christine L.
Bussard, His Wife, Appellants

v.

KWI Building Company; United McGill
Corporation; McGill Airclean Corpo-
ration; Fenwal Safety Systems, Inc.
and GreCon Electronics, Inc., Appel-
lees.

David A. Johnson and Stacey
L. Johnson, His Wife,
Appellants

v.

KWI Building Company; United McGill
Corporation; McGill Airclean Corpo-
ration; Fenwal Safety Systems, Inc.
and GreCon Electronics, Inc., Appel-
lees.

Jody L. Covert, Executrix of the
Estate of James C. Covert,
Deceased, Appellant

v.

KWI Building Company; United McGill
Corporation; McGill Airclean Corpo-
ration; Fenwal Safety Systems, Inc.
and GreCon Electronics, Inc., Appel-
lees.

Joyce Engelken, Executrix of the Estate
of Gregg Engelken (a/k/a Gregory G.),
Deceased and Joyce Engelken, Wife
Individually, Appellants

v.

KWI Building Company; United McGill
Corporation; McGill Airclean Corpo-
ration; Fenwal Safety Systems, Inc.

and GreCon Electronics, Inc., Appel-
lees.

Superior Court of Pennsylvania.

Argued Oct. 3, 2006.

Filed Jan. 2, 2007.

Meghan Fawcett, Pittsburgh, for Bozic and Barnish (at 1983), Bussard (at 1984), Johnson (at 1985), appellants.

Kim M. Watterson, for GreCon, appellee.

BEFORE: HUDOCK, ORIE MELVIN and BENDER, JJ.

OPINION BY BENDER, J.:

¶ 1 The appellants in the above-captioned consolidated cases are the plaintiffs in this products liability action arising

from an explosion and fire at a particleboard manufacturing facility.[1] They claim that the trial court erred by granting summary judgment in favor of defendant GreCon Electronics, Inc. ("GreCon"), the manufacturer of heat sensors that had been installed at the particleboard facility, and the only remaining defendant who did not settle with Plaintiff/Appellants.[2] Plaintiff/Appellants claimed that three consecutive heat sensors malfunctioned by failing to alarm and douse with water a large glowing ember in particle board materials being moved on a conveyor belt in the facility, resulting in the explosion and fire. Since the sensors disappeared after the incident and were therefore unavailable for this litigation, Plaintiff/Appellants proceeded on a malfunction theory of strict product liability, as further described below. However, since Plaintiff/Appellants conceded that the sensors worked properly for ten years, *i.e.*, from the time that they had been originally installed by GreCon, the trial court concluded that a reasonable jury could not conclude that the sensors were defective when they left GreCon's control for purposes of establishing a product liability claim. We affirm.

¶ 2 The trial court set forth a summary of the undisputed facts in this case:

> In 1991, GreCon sold spark detection sensors and a central control panel used to monitor the sensors to Allegheny Particleboard, Inc., owner of a particleboard plant in Mount Jewett, Pennsylvania. The system, designed and manufactured by GreCon, was intended to detect sparks and light sources [in particleboard being manufactured] and activate an automated alarm and water deluge response. These sensors operated for ten years without incident. Plaintiffs' Response to Defendant's Motion for Summary Judgment, ¶ 13.

> On February 13, 2001 at approximately 5:30 p.m. several [plant] employees saw a large glowing ember in an area of the plant known as the "# 3 outfeed conveyor." These employees observed the ember in a location beyond the first three sensors (S1, S2 and S3) and immediately prior to the fourth sensor (S4), located at the end of the # 3 outfeed conveyor. Despite the presence of the ember, none of the GreCon sensors activated and, at approximately 8:55 p.m., there was a large explosion and fire. As a result of the explosion, Plaintiffs Barnish, Bussard, Johnson, Meade and Whipkey sustained severe burns and other serious injuries. Plaintiffs Engelken, Covert and Smith were killed. Trial Court Opinion (T.C.O.), 10/17/05, at 2–3.[3]

¶ 3 Plaintiff/Appellants initiated this action against numerous defendants by writ of summons on November 30, 2001, followed by a complaint filed on June 21, 2002. On October 4, 2004, defendant GreCon filed a motion for summary judgment. On October 17, 2005, the trial court granted GreCon's motion for summary judgment.[4] Plaintiff/Appellants settled their

---

1. The plaintiffs/appellants in the instant appeal are, specifically, Alfonce A Barnish and Billie M. Bozic, husband and wife; Sandy L. and Christine L. Bussard, husband and wife; David A. and Stacey L. Johnson, husband and wife; Jody L. Covert, executrix of the estate of James C. Covert, deceased; Joyce Engelken, executrix of the estate of Gregg Engelken (a/k/a Gregory G.), deceased and Joyce En

gelken, individually (hereinafter "Plaintiff/Appellants").

2. The other defendants are not involved in the instant appeal.

3. Apparently, plaintiffs Meade, Whipkey, and Smith are not parties to this appeal.

4. The order granting summary judgment was placed on the docket on October 19, 2005.

claims with all of the defendants except GreCon. Plaintiff/Appellants filed a timely appeal from the order granting GreCon's motion for summary judgment.

¶ 4 Plaintiff/Appellants present the following "Statement of the Questions Involved" to this Court:

1. Did the trial court err in granting summary judgment in favor of Defendant GreCon when the trial court's own conclusions established as a matter of law that the Plaintiffs had made out a prima facie case of product liability on the malfunction theory?

2. Did the trial court err by including in its analysis at the summary judgment stage the Defendant's suggestion, not supported by any evidence, of an alternative cause, when the Plaintiffs' case did not itself indicate an alternative cause?

Plaintiff/Appellants' brief at 4. Plaintiff/Appellants do not separate the argument portion of their brief to correspond with the above two questions, as is required by Pa.R.A.P. 2119(a). Instead, Plaintiff/Appellants present the following related question in the heading of the argument portion of their brief: "the trial court erred by granting summary judgment on the ground that the plaintiffs could not prove that the sensors were defective when they left GreCon's hands." Plaintiff/Appellants' brief at 8.

A trial court's basis for granting a summary judgment motion and this Court's standard of review in summary judgment matters are as follows:

> Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontroversial allegations in the pleadings, depositions, answers to interrogatories, admissions of record and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.
>
> As already noted, on appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.

*Chepkevich v. Hidden Valley Resort, L.P.,* 911 A.2d 946, 950 (Pa.Super.2006) (citation omitted).

¶ 5 To establish a *prima facie* case of strict product liability, a plaintiff must prove that "(1) the product was defective; (2) the defect was the proximate cause of the plaintiff's injuries; and (3) the defect existed at the time it left the manufacturer's control." *Woodin v. J.C. Penney Co., Inc.,* 427 Pa.Super. 488, 629 A.2d

974, 975 (1993). Usually, the plaintiff will proffer direct evidence of a defect. *Id.* However, it is not always possible to establish the precise nature of a defect, such as where the product at issue has been destroyed or, as in the instant case, is missing. *See id.* In such cases, the plaintiff may rely on the malfunction theory of product liability, which "allows the plaintiff to use circumstantial evidence to establish a defective product." *Id.* at 976. "From this circumstantial evidence, a jury may be permitted to infer that the product was defective at the time of sale." *Dansak v. Cameron Coca–Cola Bottling Co.*, 703 A.2d 489, 496 (Pa.Super.1997).

> [The malfunction theory] permits a plaintiff to prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction. [The plaintiff is relieved] from demonstrating precisely the defect yet it permits the trier-of-fact to infer one existed from evidence of the malfunction, of the absence of abnormal use and of the absence of reasonable, secondary causes.

*Woodin,* 629 A.2d at 976 (quoting *Rogers v. Johnson & Johnson Prods., Inc.,* 523 Pa. 176, 565 A.2d 751, 754 (1989)). Even though "proof of a specific defect is not essential to establish liability under [the malfunction] theory, the plaintiff cannot depend upon conjecture or guesswork." *Id.* "The mere fact that an accident happens, even in this enlightened age, does not take the injured plaintiff to the jury." *Dansak,* 703 A.2d at 496 (citations omitted).

■ ¶ 6 Plaintiff/Appellants established the occurrence of a malfunction for purposes of the first prong of a *prima facie* case under the malfunction theory of product liability. However, it is also essential that they eliminate evidence of reasonable secondary causes of the malfunction or abnormal use that appears in their case-in-chief. Although a plaintiff proceeding under the malfunction theory "[need not] negate every theoretically conceivable secondary cause for the malfunction[,]" the plaintiff cannot establish a *prima facie* case if the plaintiff fails to negate evidence of other reasonable, secondary causes that could account for the accident or evidence of abnormal use that the plaintiff introduces in its own case-in-chief, *i.e.,* based upon its own proof. *Id.* at 497 (citation omitted). When it is the *defendant* who hypothesizes or presents evidence of reasonable secondary causes, summary judgment is not warranted. *Id.*

■ ¶ 7 Indeed, "[t]he questions when and where a defect originated should be left to the finder of fact so long as reasonable and well balanced minds (could) be satisfied from the evidence adduced that the defective condition existed when the machine was delivered[.]" *Kuisis v. Baldwin–Lima–Hamilton Corp.,* 457 Pa. 321, 319 A.2d 914, 922 (1974) (citation and quotation marks omitted). Nevertheless, "the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but ... there must be evidence upon which logically its conclusion may be based[.]" *Id.* (citation and quotation marks omitted).

¶ 8 As noted above, Plaintiff/Appellants conceded that the sensors functioned without incident from the time they were installed ten years prior to the accident up until the time of the accident. *See* Plaintiffs' Response to Defendant GreCon Electronics, Inc.'s Motion for Summary Judgment, 10/21/04, at ¶ 13 ("The evidence of record establishes that, prior to February 13, 2001, the GreCon detection system had functioned properly."). In *Kuisis,* the plaintiff sustained injuries when a load on a crane, which had been in use for twenty

years, fell on him due to the failure of a brake locking mechanism on the crane. With regard to prolonged use of a product in the context of the malfunction theory of product liability, the *Kuisis* court stated:

We recognize that, as a general rule, "prolonged use of a manufactured article is but one factor, albeit an important one, in the determination of the factual issue whether [a defect in design or] manufacture proximately cased the harm." The age of an allegedly defective product must be considered in light of its expected useful life and the stress to which it has been subjected. In most cases, the weighing of these factors should be left to the finder of fact. But in certain situations the prolonged use factor may loom so large as to obscure all others in a case. Professor Prosser has summarized the position generally taken by the courts on this question: "(Lapse of time and long continued use) in itself is not enough, even when it has extended over a good many years, to defeat the recovery where there is satisfactory proof of an original defect; but when there is no definite evidence, and it is only a matter of inference from the fact that something broke or gave way, the continued use usually prevents the inference that the thing was more probably than not defective when it was sold."

*Kuisis,* 319 A.2d at 923 (citations omitted). Noting that the crane had been in use for over twenty years, the *Kuisis* court concluded that a jury could not reasonably draw the inference that the brake locking mechanism on the crane was defective when it was originally delivered by the manufacturer. *Id.* at 922. Even though the plaintiff presented circumstantial evidence of a defect at the time of sale (*i.e.,* a safety engineer who examined the brake two years after the accident and found no evidence of wear, and evidence of an accident under different conditions that occurred four years after the sale of the crane), the court concluded that "[v]iewed against the record as a whole, these slender evidentiary threads are not enough to lift this contention out of the realm of speculation[,]" given the fact that the crane had been in rugged use for over twenty years. *Id.* at 923.

¶ 9 Similarly, in *Woodin,* this Court determined that the evidence presented was insufficient to prove a defect in a freezer at the time of its manufacture and sale. Specifically, the plaintiffs claimed that a fire in their home was caused by a defective power cord on their freezer. However, the plaintiffs could not identify a specific defect in the power cord, and the freezer had functioned flawlessly for eight years prior to the fire. Accordingly, we agreed with the trial court that the jury could not reasonably infer the existence of a defect merely based on the occurrence of the fire. Any conclusion to the contrary would be mere speculation, as there was no evidence to support a finding that the freezer was defective when it was sold to the plaintiffs. *See Woodin,* 629 A.2d at 976–77. *See also Hamilton v. Emerson Elec. Co.,* 133 F.Supp.2d 360, 377–78 (M.D.Pa.2001) (relying on *Kuisis* and *Woodin* to grant summary judgment in favor of manufacturer of miter saw where plaintiff used miter saw for more than one year prior to accident without incident, thereby precluding reasonable inference that saw was defective when it left control of manufacturer).

■ ¶ 10 Viewing the facts in the light most favorable to Plaintiff/Appellants, we conclude that the trial court did not commit an error of law or abuse its discretion in granting summary judgment to GreCon because a jury could not reasonably infer the existence of a defect in the sensors when they left GreCon's hands ten years

prior to the malfunction of the sensors. This is so because Plaintiff/Appellants conceded that the sensors functioned properly during that ten year period, and Plaintiff/Appellants failed to present any satisfactory proof of an original defect. *Kuisis*, 319 A.2d at 923. Accordingly, Plaintiff/Appellants did not present a case-in-chief free of reasonable, secondary causes, *e.g.*, wear and tear from prolonged use, which is necessary to establish a *prima facie* case of product liability under the malfunction theory. A jury could not reasonably infer that a defect existed at the time the sensors left GreCon's hands, as any such inference would constitute mere speculation.

¶ 11 Judgment affirmed.