**Grugnale v. Tymosky**

*Nicholas Fick,* for plaintiffs.

*Christopher A. Piazza,* for defendants Tymosky and Matczak.

*Lynanne B. Wescott,* for defendants Hearth-N-Home Technologies Inc. and HON Industries Inc.

*John F. Kent* and *Anne Manero,* for defendant S&T Coombe Inc.

*William E. Schaefer,* for defendant SIT Controls USA Inc.

MINORA, *J.,* October 10, 2007—

## INTRODUCTION

Before the court is the motion for summary judgment filed by defendant S&T Coombe Inc. and joined by co-defendants Hearth-N-Home Technologies Inc., HON Industries Inc. and SIT Controls USA Inc. This is a products liability action brought by the plaintiffs, Michael and Jackie Grugnale. The relevant facts follow.

Plaintiff Michael Grugnale sustained injuries working in the course and scope of his employment with Suburban Propane while hooking up the propane gas tanks and lighting the stove/fireplace at the home of defendants George Tymosky and Annette Matczak. The stove in question was identified as the Quadra-fire "Topaz" model gas fireplace/stove. Plaintiff avers that he sustained injuries as a result of this accident including cuts to his face and eyes, as well as impaired vision.

Several defendants are identified and described in the plaintiffs' complaint. They are defendants George Tymosky and Annette Matczak, residents of 308 Sky Drive, Lake Harmony, Pennsylvania and 122 Shewell Drive, Doyelstown, Pennsylvania. Defendant Matczak is listed as the owner of the property at 308 Sky Drive, Lake Harmony, the location of the defective product at the time of injury.

Defendants Hearth-N-Home Technologies Inc. and HON Industries Inc., the stove manufacturer, are business entities and/or corporations organized and existing under the laws of the state of Iowa, with a registered office at 414 E. Third Street, P.O. Box 1109, Muscatine, Iowa.

Defendant S&T Coombe Inc., distributor of the stove, is a business entity and/or corporation organized under the laws of the Commonwealth of Pennsylvania, with a registered office located at Route 940, P.O. Box 599, Blakeslee, Pennsylvania.

Defendant Advantage Contracting, the stove installer, is a business entity or corporation organized under the laws of the Commonwealth of Pennsylvania with a reg-

istered location at P.O. Box 71, Delaware Water Gap, Pennsylvania.

Defendant SIT Controls USA Inc.[1] is a business entity and/or corporation organized and existing under the laws of the state of North Carolina with a registered office located at 900 Center Park Drive, Suite J, Charlotte, North Carolina.

Defendant homeowners Tymosky and Matczak allegedly purchased the subject stove from S&T Coombe on September 28, 2003. S&T Coombe converted the stove from gas to propane. The events that occurred on the morning of the incident giving rise to the current action were provided as follows. Plaintiff Michael Grugnale was called to the residence of Defendant Tymsoky and Defendant Matczak on December 24, 2003 to address a problem with the fireplace/stove. Plaintiff Michael Grugnale and his co-worker went to defendant Matczak's residence to install two propane tanks, and connect them to the residence. Defendant Tymosky allegedly advised plaintiff and his co-worker where the tanks should be placed. Defendant Tymosky showed plaintiff a "feed line" that defendant Tymosky installed. The feed line ran to the other side of the house via the front lawn. Plaintiff states that he and his co-worker connected the propane tanks together and in-

---

1. Plaintiffs' complaint identified SIT Controls USA Inc. as the manufacturer of the gas control valve in the subject stove. Defendant SIT Controls USA Inc. identified itself as the distributor of the Nova pressure regulator. See SIT Controls answer to defendant S&T Coombe's motion for summary judgment at ¶2. As plaintiffs have indicated in their reply brief filed on May 9, 2007, plaintiffs and defendant SIT Controls disagree on whether SIT was manufacturer or distributor of the valve.

stalled a regulator where the propane left the tanks. After the propane tanks were connected and the regulators installed, plaintiff alleges that everything was pressure-checked and there were no problems.

Plaintiff and his co-worker had determined the feed line that defendant Tymosky installed was too small to carry the necessary gas load to the stove, due to the size of the piping and the length of the run. They decided to install a second stage regulator on the left side of the residence just before piping entered the residence. Mr. Grugnale cut the copper tubing and installed the second stage regulator with all appropriate pressure tests being performed. At that point, as plaintiff alleges, all of the appropriate testing had been done with the tanks, showing no problems. Plaintiff states the pressures were recorded and all were within normal limits.

Plaintiff then entered the residence and requested the stove's owners' manual from defendant Tymosky. According to the plaintiff, defendant Tymosky stated that the owners' manual was at his other residence (located in the Doylestown area). Plaintiff alleged that the stove was connected to the gas line, and installation/connection was done by defendant Advantage Contracting.

Plaintiff Grugnale then attempted to light the stove by depressing the pilot button and hitting the ignitor. Plaintiff stated that according to his recollection, he hit the ignitor two or three times in an estimated three- to five-second time period. Plaintiff stated that he heard a clicking but was not sure whether the stove was lighting. Thereafter, he leaned forward to determine wheth-

er the ignitor was creating a spark, he again struck the ignitor and the stove exploded. Plaintiff stated that his injuries were the result of the explosion and flying glass, other equipment and debris that flew through the room.

Plaintiffs' complaint set forth the following counts:

*"First cause of action:*

*"Count I—Breach of express warranty* (Plaintiff Michael Grugnale v. George Tymosky, Annette Matczak, Hearth-N-Home Technologies Inc. and HON Industries Inc., S&T Coombe Inc., Advantage Contracting Inc., and SIT Controls USA Inc.)

*"Count II—Breach of express warranty* (Plaintiff Michael Grugnale v. George Tymosky, Annette Matczak, Hearth-N-Home Technologies Inc. and HON Industries Inc., S&T Coombe Inc., Advantage Contracting Inc., and SIT Controls USA Inc.)

*"Second cause of action:*

*"Count I—Breach of implied warranties, merchantability and fitness for a particular purpose* (Plaintiff Michael Grugnale v. George Tymosky, Annette Matczak, Hearth-N-Home Technologies Inc. and HON Industries Inc., S&T Coombe Inc., Advantage Contracting Inc., and SIT Controls USA Inc.)

*"Count II—Breach of implied warranties, merchantability and fitness for a particular purpose* (Plaintiff Jackie Grugnale v. George Tymosky, Annette Matczak, Hearth-N-Home Technologies Inc. and HON Industries Inc., S&T Coombe Inc., Advantage Contracting Inc., and SIT Controls USA Inc.)

"*Third cause of action:*

"*Count I—Breach of implied warranties, fitness for a particular purpose* (Plaintiff Michael Grugnale v. George Tymosky, Annette Matczak, Hearth-N-Home Technologies Inc. and HON Industries Inc., S&T Coombe Inc., Advantage Contracting Inc., and SIT Controls USA Inc.)

"*Count II—Breach of implied warranties, fitness for a particular purpose* (Plaintiff Jackie Grugnale v. George Tymosky, Annette Matczak, Hearth-N-Home Technologies Inc. and HON Industries Inc., S&T Coombe Inc., Advantage Contracting Inc., and SIT Controls USA Inc.)

"*Fourth cause of action:*

"*Count I—Negligence* (Plaintiff Michael Grugnale v. George Tymosky, Annette Matczak, Hearth-N-Home Technologies Inc. and HON Industries Inc., S&T Coombe Inc., Advantage Contracting Inc., and SIT Controls USA Inc.)

"*Count II—Negligence* (Plaintiff Jackie Grugnale v. George Tymosky, Annette Matczak, Hearth-N-Home Technologies Inc. and HON Industries Inc., S&T Coombe Inc., Advantage Contracting Inc., and SIT Controls USA Inc.)

"*Fifth cause of action:*

"*Count I—Products liability, 402A strict liability* (Plaintiff Michael Grugnale v. George Tymosky, Annette Matczak, Hearth-N-Home Technologies Inc. and HON Industries Inc., S&T Coombe Inc., Advantage Contracting Inc., and SIT Controls USA Inc.)

*"Count II—Products liability, 402A strict liability* (Plaintiff Jackie Grugnale v. George Tymosky, Annette Matczak, Hearth-N-Home Technologies Inc. and HON Industries Inc., S&T Coombe Inc., Advantage Contracting Inc., and SIT Controls USA Inc.)"

Subsequent pleadings followed. On January 30, 2007, Defendant S&T Coombe Inc. filed its motion for summary judgment with the Court of Common Pleas of Lackawanna County and on March 5, 2007, its corresponding memorandum of law in support of the motion for summary judgment. On April 20, 2007, co-defendants Hearth-N-Home Technologies Inc. and HON Industries Inc. filed a joinder to S&T Coombe's motion for summary judgment. On April 23, 2007, defendant SIT Controls USA Inc. filed an answer to co-defendant S&T Coombe's motion for summary judgment whereby SIT Controls also joined S&T Coombe's motion for summary judgment.[2] Plaintiffs filed a memorandum of law on April 23, 2007. Defendant S&T Coombe filed a reply to plaintiffs' memorandum in opposition to its motion for summary judgment on May 3, 2007. Plaintiffs filed an additional reply on May 9, 2007. Defendant S&T Coombe filed a response to the plaintiffs' reply on May 17, 2007. Also on May 17, 2007, defendant SIT Controls filed a memorandum of law in response to plaintiffs' reply brief. On May 18, 2007, Hearth-N-Home and HON Industries filed a reply to plaintiffs' reply to defendants' summary judgment motions. In the midst of the exhaustive (and at one point, seemingly infinite) briefing on

2. Co-defendants Tymosky and Matczak filed a separate motion for summary judgment and requested oral argument on April 23, 2007, which is not yet ripe because oral argument has not occurred.

these motions by the parties, this court entertained oral argument on S&T Coombe's motion for summary judgment on April 24, 2007. This matter is now ripe for disposition.

## MOTIONS FOR SUMMARY JUDGMENT— ARGUMENTS

Defendants S&T Coombe and SIT Controls, who have filed substantial briefs on their positions, argue that plaintiffs were required to file expert opinions or evidence to address the specific problem with the stove that caused the accident. These defendants rely on the theory that knowledge of this product is beyond the understanding of an ordinary layman; thus, plaintiffs were required to submit expert testimony to articulate that either the product was defective, or the stove was improperly converted from gas to propane. Plaintiffs' failure to produce expert evidence concerning the accident and subsequent injuries pursuant to the discovery deadline issued by order of Special Trial Master Campagna is a failure on the plaintiffs' part to sustain their burden of establishing a cause of action against defendants.

More specifically, defendant S&T Coombe argues that it is entitled to summary judgment on two grounds: (a) there is an absence of expert evidence proving a product defect, and (b) there is an absence of expert evidence proving the gas stove was improperly converted from gas to propane. See memorandum of law in support of defendant S&T Coombe's motion for summary judgment at 5. S&T Coombe's basis for arguing that plaintiffs failed to submit expert reports relies on the July 6, 2006 order of Special Trial Master Campagna, setting forth several

discovery deadlines specifically, "Plaintiffs shall serve their expert reports by November 1, 2006."

Defendant S&T Coombe's motion for summary judgment argues, "To prevail in a strict products liability action, plaintiffs are required to prove the product at issue was defective, that the defect existed at the time it left the manufacturer's control and that the defect was the proximate cause of the injury." See motion for summary judgment of defendant S&T Coombe at ¶5. (citations omitted) Further, defendant S&T Coombe argued that "Plaintiffs are obligated to produce expert evidence to prove a product defect in this case as the subject matter involves complex engineering principles which are beyond the knowledge of a layman," and "Plaintiffs are obligated to produce expert evidence to prove that the stove was improperly converted from gas to propane, as the conversion of a stove also involves complex engineering principles beyond the knowledge of a layman." See motion for summary judgment of defendant S&T Coombe at ¶6 and ¶7, respectively. (citations omitted)

Plaintiffs argue that strict liability applies to their case because the stove was manufactured and placed into the stream of commerce by the defendants. Plaintiffs argued that an inspection of the stove following the accident revealed that the stove was defective. See plaintiffs' memorandum of law in response to S&T Coombe's motion for summary judgment at 9. Plaintiffs further argue that defendants failed to test the stove and its components prior to the stove being released into the stream of commerce. Plaintiffs set forth two possible causes for the accident: "First, one of the defendants applied excessive pressure to the valve, thereby damaging the same, or

second, the valve was manufactured with the main seat out of place." See plaintiffs' memorandum of law at 10. Plaintiffs also note the malfunction theory of products liability enables a plaintiff to pursue a cause of action for products liability based on malfunction without identifying the specific defect. *Id.*

In their second reply brief, filed on May 9, 2007, plaintiffs explicitly assert their intention to proceed with their cause of action under the malfunction theory of products liability.[3] See plaintiffs' second reply brief, at 3-4. Plaintiffs state, "the circumstantial evidence of this case prove [sic] a defective product under the 'malfunction theory' . . . Common sense dictates that a stove is not to explode when it is attempted to be used for its intended purpose. There is no need for expert testimony concerning the same." *Id.* at 8.

## SUMMARY JUDGMENT STANDARD

The standard for evaluating motions for summary judgment is provided in Pa.R.C.P. 1035.2:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

---

3. A reading of plaintiffs' first reply brief of April 23, 2007 and their second reply brief of May 9, 2007 yield an interesting and somewhat puzzling comparison. In the initial reply brief, plaintiffs seem to mention the "malfunction theory" as somewhat of an afterthought, following their extensive discussion of the inspection of the stove and the alleged defective components that were discovered upon this examination by an employee of SIT Controls. In their second reply brief, plaintiffs seem to rely entirely on the malfunction theory.

"(1) whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or export report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

As stated recently by the Pennsylvania Supreme Court in *Toy v. Metropolitan Life Insurance Co.*, 928 A.2d 186, 194-95 (Pa. 2007):

"The Pennsylvania Rules of Civil Procedure that govern summary judgment instruct in relevant part, that the court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense *that could be established by additional discovery.* Pa.R.C.P. 1035.2(1). Under the rules, a motion for *summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law.* Note to Pa.R.C.P. 1035.2. (footnote omitted) In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Jones v. SEPTA,* 565 Pa. 211, [216], 772 A.2d 435, 438 (2001). Finally, the court may grant summary judgment only where the right to such a judgment is clear and free from doubt. *Marks v. Tasman,* 527 Pa. 132, 134-35, 589 A.2d 205, 206 (1991)." (emphasis added)

In light of the standard for evaluating motions for summary judgment and considering the parties' arguments, we now examine case law addressing the malfunction theory[4] of products liability and the responsibility in establishing the burden of proof on the party asserting the cause of action to determine whether summary judgment is appropriate here.

In *Rogers v. Johnson & Johnson Products Incorporated,* 523 Pa. 176, 565 A.2d 751 (1989), following a jury verdict for the plaintiff, the Supreme Court of Pennsylvania was presented with an appeal from the decision of the Superior Court granting a new trial when the plaintiff submitted the malfunction theory of products liability to the jury while defendant manufacturer presented evidence of negligence. The plaintiff was allegedly injured after doctors treating the plaintiff for a broken leg applied plaster to set the leg. The plaster was designed to operate exothermically. The plaintiff complained of a burning sensation to his leg; he was advised it was normal to experience heat with this type of plaster. When the splint was removed, second and third degree burns were discovered on the plaintiff's leg. The court

---

4. The malfunction theory of products liability was recently examined by Arthur L. Bugay, Esq. in "Product Liability Developments Under the New Pennsylvania Evidence Rules and Recent Litigation," 77 *Pa. Bar Quarterly* 1, 16 n.86 (January 2006). The author described products liability cases concerning the malfunction theory:

"Ultimately, such circumstantial evidence cases depend upon the plaintiff's ability to eliminate reasonable secondary causes of the accident. Where this is done, the fact-finder can reasonably infer the product defect—by malfunction or manufacture—was the cause of the plaintiff's accident or injuries. . . . For this reason, where one proceeds with a theory of negligence against one party, it may be logically inconsistent to argue malfunction." (citations omitted)

explained background information on strict products liability prior to considering the malfunction theory:

"Since *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966), this court has recognized a plaintiff's right to pursue an action in strict liability against the manufacturer of a product pursuant to section 402A of the Restatement (Second) of Torts. (footnote omitted) A plaintiff presents a prima facie case of strict liability by establishing that the product was defective and that the product caused the plaintiff's injury. *Sherk v. Daisy-Heddon,* 498 Pa. 594, 598, 450 A.2d 615, 617 (1982). In most instances the plaintiff will produce direct evidence of the product's defective condition. *In some instances, however, the plaintiff may not be able to prove the precise nature of the defect in which case reliance may be had on the 'malfunction' theory of product liability.* This theory encompasses nothing more than circumstantial evidence of product malfunction. See *MacDougall,* 214 Pa. Super. at 391, 257 A.2d at 680. It permits a plaintiff to prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction. See *Thompson,* 325 Pa. Super. at 394, 473 A.2d at 125; *MacDougall,* 214 Pa. Super. at 391, 257 A.2d at 680. *It thereby relieves the plaintiff from demonstrating precisely the defect yet it permits the trier-of-fact to infer one existed from evidence of the malfunction, of absence of abnormal use and of the absence of reasonable, secondary causes.* See *Thompson,* 325 Pa. Super. at 394, 473 A.2d at 125; *MacDougall,* 214 Pa. Super. at 391, 257 A.2d at 680. We now accept this evidentiary approach as appropriate in ascertaining the existence of

a defect in the manufacturing process." *Id.* at 181-82, 565 A.2d at 754. (emphasis added)

The Pennsylvania Supreme Court determined that a plaintiff may proceed on a malfunction theory of products liability even if a defendant presents evidence of a secondary cause, thereby eroding the plaintiff's theory of product malfunction. Based on the language, however, it seems that the court intended to limit the use of the malfunction theory to those factual scenarios where plaintiffs are not capable of identifying the nature of the defect. The court's language does not indicate how thoroughly a plaintiff must exhaust other possible causes of the accident, *i.e.,* whether a plaintiff must retain an expert to make an examination and eliminate other possible causes of the accident, a point also noted in the dissent.[5]

*Dansak v. Cameron Coca-Cola Bottling Co.,* 703 A.2d 489 (Pa. Super. 1997), *appeal denied,* 556 Pa. 676, 727 A.2d 131 (1998) is another case in which a plaintiff

---

5. As Justice Flaherty stated in his dissenting opinion:

"The defendant, however, may put in evidence that the malfunction was caused by secondary causes separate and apart from any alleged defect in the product. If the defendant produces such evidence, the plaintiff then must negate it, *for the survival of his cause of action depends upon his establishing that nothing outside of the product itself caused the malfunction,* since if a 'secondary cause' created the malfunction, the product itself was not defective and the products liability claim would fail. In other words, a malfunction-theory plaintiff must negate evidence that secondary causes were responsible for the malfunction.

"**The question which this raises, however, is what a malfunction-theory plaintiff must do in order to negate such secondary cause evidence.**" *Id.* at 186, 565 A.2d at 756. (italics in original, second emphasis added)

proceeded in part on the malfunction theory of products liability. In *Dansak,* the plaintiff convenience store worker was injured while stocking the store's coolers with drinks in glass bottles that she was removing from their six-pack containers. The plaintiff cut her hand on one of the glass bottles when the bottom of the bottle stuck to the six-pack container and broke from the rest of the bottle. The six-pack container, including the bottle that allegedly caused the plaintiff's injuries, was thrown away by the store manager.[6] The Superior Court was asked to consider the trial court's decision that granted defendant's motion for summary judgment.[7] The court addressed the burden on a plaintiff when pursuing a claim under the malfunction theory of products liability:

"When proceeding on a malfunction theory, the plaintiff may 'present a case in chief evidencing the occurrence of a malfunction and eliminating abnormal use or reasonable, secondary causes for the malfunction.' (citation omitted) From this circumstantial evidence, a jury may be permitted to infer that the product was defective at the time of sale. . . .

"Although proof of a specific defect is not essential to establish liability under this theory, the plaintiff cannot depend upon conjecture or guesswork. 'The mere fact

---

6. The court further noted, "No party to the litigation was responsible for the bottle's disappearance, and no party ever had the opportunity to inspect the product before it was destroyed." *Id.* at 491.

7. One component of the court's analysis concerned the spoliation of the evidence doctrine, further discussion on this element of the court's analysis is omitted here because it is inapplicable to the case sub judice.

that an accident happens, even in this enlightened age, does not take the injured plaintiff to the jury.' (citations omitted).

"The malfunction theory, thus, does not relieve the burden of establishing a defect. However, '[t]he malfunction itself is circumstantial evidence of a defective condition.' (citation omitted)" *Dansak,* 703 A.2d at 495-96 (citing *Ducko v. Chrysler Motors Corp.,* 433 Pa. Super. 47, 49-53, 639 A.2d 1204, 1205-1206 (1994)).

Recently, the Superior Court again examined the malfunction theory of products liability in *Barnish v. KWI Building Co.,* 916 A.2d 642 (Pa. Super. 2007). In *Barnish,* employees working at a particleboard manufacturing facility were injured after an explosion at the factory. The plaintiffs pursued a cause of action against defendant GreCon, manufacturer of the heat sensors that were installed at the particleboard facility. The heat sensors were discarded after the accident causing the plaintiffs' injuries; plaintiffs pursued their case against the defendant under the malfunction theory of products liability. It was established that the heat sensors worked properly for approximately 10 years, and "the trial court concluded that a reasonable jury could not conclude that the sensors were defective when they left GreCon's control for purposes of establishing a product liability claim." *Id.* at 644. Plaintiffs appealed, and the Pennsylvania Superior Court affirmed. The court explained:

"Plaintiffs/appellants established the occurrence of a malfunction for the purposes of the first prong of a prima facie case under the malfunction theory of product liability. However, it is also essential that they eliminate evidence of reasonable secondary causes of

the malfunction or abnormal use that appears in their case in chief. Although a plaintiff proceeding under the malfunction theory '[need not] negate every theoretically conceivable secondary cause for the malfunction[,]' the plaintiff cannot establish a pima facie case if the plaintiff fails to negate evidence of other reasonable, secondary causes that could account for the accident or evidence of abnormal use that the plaintiff introduces in its own case in chief, *i.e.,* based upon its own proof. (citation omitted) When it is the *defendant* who hypothesizes or presents evidence of reasonable secondary causes, summary judgment is not warranted. (citation omitted)" *Id.* at 646 (emphasis in original) (citing *Dansak v. Cameron Coca-Cola Bottling Co.,* 703 A.2d 489).

In *Van Horn v. Reinhart Flynn Inc.,* 62 D.&C.4th 358 (Carbon Cty. 2003), the plaintiff was injured while test-driving a used car as a prospective purchaser. The cruise control in the vehicle failed to disengage after the plaintiff attempted to apply the car's brakes. The defendant moved for summary judgment. The court explained the point of contention between the parties:

"Plaintiffs have neither secured an expert nor presented an expert's report with respect to their products liability claims against Reinhart [defendant seller of the used vehicle]. In the absence of expert opinion testimony, Reinhart contends plaintiffs are unable and have failed to present a prima facie case of liability. In ruling on Reinhart's motion for summary judgment on this basis, we must distinguish between the nature of plaintiffs' claims for strict liability and negligence." *Id.* at 366.

The court found summary judgment was not appropriate even though defendant had suggested possible secondary causes of the accident. ("Under the circumstances, at this stage of the proceedings we believe plaintiffs' evidence of a claim for strict products liability is sufficient to withstand defendant's motion for summary judgment." *Id.* at 371.)

We find the instant case factually and procedurally similar to *Van Horn*. Certainly, an expert report would be helpful in providing guidance on the very technical aspects of stove/fireplace operations, gas to propane conversions, or valve operations. However, it is not the position of the court to guide parties on trial strategy. Plaintiffs are entitled to choose and pursue their own theories of trial strategy, however seemingly contradictory their arguments may be. We note that initially, plaintiffs seemed to blame each defendant in its respective capacity of a failure to test the product. Also, in their first memorandum of law in response to the motions for summary judgment, plaintiffs set forth an inspection of the stove following the accident indicated that the stove was defective. In just three weeks time, however, plaintiffs firmly argued that the malfunction theory of products liability definitely applied to this case which allows the plaintiffs to proceed with a products liability action without pinpointing the exact cause of the accident.

The motion for summary judgment of defendant S&T Coombe, in which co-defendants Hearth-N-Home and HON Industries, and SIT Controls Inc. also join is granted in part and denied in part. An appropriate order follows.

## ORDER

And now, October 10, 2007, the motion for summary judgment filed by S&T Coombe, and joined by co-defendants Hearth-N-Home Technologies Inc., HON Industries Inc. and SIT Controls USA Inc. is granted as to plaintiffs' cause of action IV, negligence. Plaintiffs' cause of action V, products liability 402A strict liability is limited to plaintiffs' claim based on the malfunction theory of products liability.