980 A.2d 535

Alfonce A. BARNISH and Billie M. Bozic, his Wife, Appellants

v.

KWI BUILDING COMPANY; United McGill Corporation; McGill Airclean Corporation; Fenwal Safety Systems, Inc.; and Grecon Electronics, Inc., Appellees.

Sandy L. Bussard and Christine L. Bussard, his Wife, Appellants

v.

KWI Building Company; United McGill Corporation; McGill Airclean Corporation; Fenwal Safety Systems, Inc.; and Grecon Electronics, Inc., Appellees.

David A. Johnson and Stacey L. Johnson, his Wife, Appellants

v.

KWI Building Company; United McGill Corporation; McGill Airclean Corporation; Fenwal Safety Systems, Inc.; and Grecon Electronics, Inc., Appellees.

Jody L. Covert, Executrix of the Estate of James C. Covert, Deceased, Appellant

v.

KWI Building Company; United McGill Corporation; McGill Airclean Corporation; Fenwal Safety Systems, Inc.; and Grecon Electronics, Inc., Appellees.

Joyce Engelken, Executrix of the Estate Of Gregg Engelken (a/k/a Gregory G.), Deceased, and Joyce Engelken, Wife, Individually, Appellants

v.

KWI Building Company; United McGill Corporation; McGill Airclean Corporation; Fenwal Safety Systems, Inc.; and Grecon Electronics, Inc., Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 8, 2008.

Decided Oct. 2, 2009.

404

406

Meghan Fawcett Wise, Pittsburgh, Zimmer Kunz, P.L.L.C., for Alfonce A. Barnish and Billie M. Bozic.

Paul A. Hilko, Jon Robert Perry, Rosen Louik & Perry, P.C., Pittsburgh, for Jody L. Covert.

Brian Scott Kane, Dapper, Baldasare, Benson, Behling & Kane, P.C., Pittsburgh, for KWI Building Company.

Warren L. Siegfried, Wayman, Irvin & McAuley, L.L.C., Pittsburgh, for Fenwal Safety Systems, Inc.

Kim M. Watterson, Reed Smith, Pittsburgh, L.L.P., Patrick Louis Mechas, Burns, White & Hickton, L.L.C., Jeffrey Phillips MacHarg, Reed Smith, L.L.C., for Grecon Electronics, Inc.

Joshua Wall, Cozen O'Connor, Philadelphia, for United McGill Corporation & McGill Airclean Corporation.

Christopher M. Arfaa, Law Office of Christopher M. Arfaa, P.C., for Pacific Legal Foundation.

Ansley Stell Westbrook, II, Pittsburgh, Robb Leonard Mulvihill, L.L.P., for Joyce Engelken.

Before: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## *OPINION*

Justice BAER.

We granted review in this case to consider the effect of a product's prior successful use on a plaintiff's ability to withstand summary judgment in a strict product liability action based upon the malfunction theory. As will be discussed in more detail below, a plaintiff pursuing a case under the malfunction theory can assert a successful strict product liability claim based purely on circumstantial evidence in cases where the allegedly defective product has been destroyed or is otherwise unavailable. Although the plaintiff does not have to specify the defect in the product, the plaintiff nonetheless must present evidence from which a jury can infer the elements of a strict liability action, beyond mere speculation. In this case, the plaintiffs sued numerous defendants that they alleged were liable for an explosion and fire in February 2001, at a particleboard plant. The only remaining defendant at this juncture is the manufacturer of the factory's spark detection system, which plaintiffs allege malfunctioned when it failed to activate as intended, precipitating the catastrophe. The trial court granted summary judgment to the manufacturer of the spark detection system, and the Superior Court affirmed. We affirm the decision based on the standard principle of summary judgment that a plaintiff must establish a genuine issue of material fact as to each element of the plaintiff's cause of action challenged in the defendant's motion for summary judgment. In this case, the defendant chal-

lenged the plaintiffs' ability to establish that the product's allegedly defective condition existed when it left the manufacturer's control, in light of the plaintiffs' admission that the product functioned properly for ten years prior to the incident in question. Absent some evidence, direct or circumstantial, to explain how the product could both function properly prior to the accident and be defective at the time of delivery, the plaintiffs failed to meet the required element of a strict liability claim that the product was defective when it left the manufacturer's control. Accordingly, we affirm the grant of summary judgment to the defendant.

In 1991, Allegheny Particleboard, Inc. (API) purchased a spark detection system from GreCon Electronics, Inc. (Manufacturer) for its Mount Jewett, Pennsylvania particleboard manufacturing plant. The system was designed with multiple sensors to detect sparks along a conveyor belt system carrying combustible raw materials. If the sensors detected sparks or a heat source, the system would respond by sounding an alarm, triggering a water deluge, and, at times, other measures, such as reversing the direction of the conveyor belt, depending on which sensor was triggered. API performed all maintenance on the system, save for one service call Manufacturer made to the plant in 1993. Indeed, the plaintiffs in this case admitted that the "evidence of record establishes that, prior to February 13, 2001, the [Manufacturer's] detection system had functioned properly." Plaintiff's Response to [Manufacturer's] Motion for Summary Judgment, ¶ 13. In this regard, one of the named plaintiffs testified at his deposition that the sensors in question had activated properly during "numerous other fires" and a prior explosion at the plant. Deposition of Alfonce Barnish, at 142–43(Q: "Do you know if in fact these sensors, if they were involved in any aspect of these fires and explosions, if they in fact activated prior to the events?" A: "Yes."), 198 (answering affirmatively that "[e]very time there had been a fire that originated in the dryer, it has been detected by [Manufacturer's] sensor prior to February 13, 2001").

On February 13, 2001, Plaintiffs aver that employees of one of the other defendants named in the lawsuit, KWI Building Company, used a torch to cut a catwalk guardrail on the outside of the factory. It is alleged that sparks from that operation entered the plant through a gap in the wall and fell onto one of the conveyors transporting the combustible materials for the particleboard. Apparently, employees of the plant extinguished several areas of smoldering material inside the plant. Nonetheless, hours later, several of API's plant employees saw a glowing ember the size of a small football on the conveyor. Based upon the location where the ember was observed, Plaintiffs assert that it would have passed at least the fourth and fifth sensors of the detection system. However, none of the five sensors activated a response to the ember. An explosion and fire resulted, killing Gregory Engelken and James Covert and severely injuring Plaintiffs Barnish, Bussard, and Johnson.

The injured employees, their spouses, and the executrixes of the decedents estates, collectively "Plaintiffs," filed suit against various defendants,[1] including Manufacturer, in the McKean County Court of Common Pleas. Plaintiffs settled their claims against all the defendants other than Manufacturer. Plaintiffs' claim against Manufacturer sounded in strict product liability based on allegations that the sensors were defective.[2] Plaintiffs, however, could not present direct evidence of a defect in the sensors because the sensors were lost after the explosion and fire. Instead, Plaintiffs proceeded under the malfunction theory, which allows for proof of strict product liability claims through circumstantial evidence.

We digress briefly from the procedural history of this case to discuss the malfunction theory. Although many courts applying the malfunction theory under Pennsylvania law have cited to the lead opinion in Kuisis v. Baldwin–Lima–Hamil-

---

1. Defendants in the original action included KWI Building Company; United McGill Corporation; Fenwal Safety Systems, Inc.; and Manufacturer.

2. The Plaintiffs also claimed negligence and breach of warranty. The Plaintiffs have not challenged the trial court's dismissal of those claims.

*ton Corp.*, 457 Pa. 321, 319 A.2d 914 (1974), as a primary authority for Pennsylvania law on the malfunction theory, we note that that decision was a non-precedential, plurality opinion.[3] This Court, however, did adopt the malfunction theory in *Rogers v. Johnson & Johnson Products, Inc.*, 523 Pa. 176, 565 A.2d 751 (1989).

In *Rogers*, we acknowledged our prior adoption of Section 402A of the Restatement (Second) of Torts, providing for "a plaintiff's right to pursue an action in strict liability against the manufacturer of a product."[4] *Id.* at 754. To bring a Section 402A claim, a plaintiff must demonstrate, *inter alia*, that the product was defective, that the defect caused the plaintiff's injury, and the defect existed at the time the product left the manufacturer's control. *See Id.; Dansak v. Cameron Coca–Cola Bottling Co., Inc.*, 703 A.2d 489 (Pa.Su-

---

3. *Kuisis* involved a plaintiff injured by a crane that had been used successfully for twenty years. Justice Pomeroy in Parts II and III of the *Kuisis* lead opinion addressed the malfunction theory and the import of a product's continued successful use, and concluded that the prior twenty years of use doomed the malfunction theory claim. The lead opinion, joined in full only by Justice O'Brien, however, remanded the case for a new trial due to the improper exclusion of an expert. Justice Eagan concurred in result. Justice Roberts, joined by Justice Manderino, concurred only in the grant of a new trial but did not join Parts II and III relating to the malfunction theory because it addressed questions the justices believed were not necessary for the disposition of the appeal. Finally, Chief Justice Jones, joined by Justice Nix, dissented, concluding that the plaintiff's amendment of his complaint was barred by the statute of limitations.

4. § 402A. Special Liability Of Seller Of Product For Physical Harm To User Or Consumer

 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

 (a) the seller is engaged in the business of selling such a product, and

 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

 (2) The rule stated in Subsection (1) applies although

 (a) the seller has exercised all possible care in the preparation and sale of his product, and

 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

RESTATEMENT (SECOND) OF TORTS § 402A.

per.1997); RESTATEMENT (SECOND) OF TORTS § 402A(1)(b). We observed that in most cases, plaintiffs would produce direct evidence of an alleged defect in the product to establish the required elements of a Section 402A claim. "In some instances, however, the plaintiff may not be able to prove the precise nature of the defect in which case reliance may be had on the 'malfunction' theory of product liability. This theory encompasses nothing more than circumstantial evidence of product malfunction." *Id.* We stated that the malfunction theory permitted "a plaintiff to prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction." *Id.*

 While reminiscent of the logic of a *res ipsa loquitur* case, the malfunction theory requirements correlate with the three elements of a standard 402A claim. *See, e.g., Higgins v. General Motors Corp.,* 287 Ark. 390, 699 S.W.2d 741, 743 (1985)("Strictly speaking, since proof of negligence is not in issue, *res ipsa loquitur* has no application to strict liability; but the inferences which are the core of the doctrine remain, and are no less applicable."). First, the "occurrence of a malfunction" is merely circumstantial evidence that the product had a defect, even though the defect cannot be identified. The second element in the proof of a malfunction theory case, which is evidence eliminating abnormal use or reasonable, secondary causes, also helps to establish the first element of a standard strict liability case, the existence of a defect. By demonstrating the absence of other potential causes for the malfunction, the plaintiff allows the jury to infer the existence of defect from the fact of a malfunction. For example, by presenting a case free of abnormal uses, such as using the product for an unintended purpose, the plaintiff can demonstrate that the product failed to perform as a reasonable customer would expect; thus, that it malfunctioned. Similarly, by eliminating other reasonable secondary causes, a plaintiff allows the jury to infer that a defect in the product caused the malfunction, as opposed, for example, to operator error or failure to service the equipment. Similarly, by presenting a

case free of "abnormal uses" by the plaintiff and free of "other reasonable secondary causes," a plaintiff can establish through inference from circumstantial evidence the second and third elements of a 402A case, that the alleged defect caused the injury (as opposed to another cause) and that the defect existed when it left the manufacturer's control (as opposed to developing after the product left the manufacturer's control).[5]

By point of comparison, a plaintiff does not present a *prima facie* malfunction theory case if the plaintiff's theory of the case includes facts indicating that the plaintiff was using the product in violation of the product directions and/or warnings. In such a case, no reasonable jury could infer that an unspecified defect caused a malfunction when the more likely explanation is the abnormal use. Similarly, if the plaintiff's theory of the case includes another cause for the malfunction such as a improper maintenance or substantial wear and tear from regular use, a reasonable jury could not conclude that the product was defective at the time of delivery when facts presented by the plaintiff suggest a cause for the malfunction unrelated to the alleged, unspecified defect.

Conversely, if the plaintiff presents a *prima facie* case free of abnormal use and secondary causes and the defense counters with a separate theory of causation, the case should go to the jury to resolve the question of fact. *Rogers,* 565 A.2d at 755 ("[S]o long as the plaintiffs presented a case-in-chief free of secondary causes which justified the inference

---

**5.** We note the New Jersey Supreme Court provided a clear explanation of logic behind the requirements of the malfunction theory:

Accordingly, in the absence of direct evidence that the product is defective because of a manufacturing flaw or inadequate design, or other evidence which would permit an inference that a dangerous condition existed prior to sale, it is necessary to negate other causes of the failure of the product for which the defendant would not be responsible, in order to make it reasonable to infer that a dangerous condition existed at the time the defendant had control.

*Scanlon v. General Motors Corp., Chevrolet Motor Division,* 65 N.J. 582, 326 A.2d 673, 678 (1974). Obviously, in cases where the plaintiff has affirmative evidence of the elements of a Section 402A case, they would not need to meet the specific elements of the malfunction theory case.

of a defect in the product, the jury was free to accept their scenario.").

Although we have not directly addressed the malfunction theory since *Rogers,* the Superior Court and a number of federal courts applying Pennsylvania law have considered the evidentiary issues involved in this subset of Section 402A cases. The courts have noted that while the plaintiff need not demonstrate the actual product defect, the plaintiff "cannot depend upon conjecture or guesswork." *Dansak,* 703 A.2d at 496. Instead, the plaintiff must produce circumstantial evidence to establish the elements of a Section 402A cause of action. The Superior Court catalogued some potential types of circumstantial evidence including:

> (1) the malfunction of the product; (2) expert testimony as to a variety of *possible* causes; (3) the timing of the malfunction in relation to when the plaintiff first obtained the product; (4) similar accidents involving the same product; (5) elimination of other possible causes of the accident; and (6) proof tending to establish that the accident does not occur absent a manufacturing defect.

*Id.* (emphasis in original)(citing Litvin & McHugh, *Pennsylvania Torts: Law and Advocacy* § 9.33 (1996)). As succinctly described by the distinguished Judge Weis of the Court of Appeals for the Third Circuit, "Under Pennsylvania law, the application of a malfunction theory provides a means of proving a defect, but does not alter the basic requirements of section 402A of the Restatement (Second) of Torts." *Sochanski v. Sears, Roebuck and Co.,* 689 F.2d 45, 50 (3d Cir.1982).

With this background in mind, we return to the facts of the case at bar. In October 2004, Manufacturer filed a motion for summary judgment, asserting that Plaintiffs failed to aver a *prima facie* case of strict product liability based, in part, on Plaintiffs' failure to produce any evidence that the sensors were defective when they were sold in 1991. Defendant's Motion for Summary Judgment at 32. The standards for summary judgment for a malfunction theory case are governed by the relevant Rules of Civil Procedure, just like any other civil case. Accordingly, under Pa.R.C.P. 1035.2,

"the court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery." *Toy v. Metropolitan Life Ins. Co.,* 593 Pa. 20, 928 A.2d 186, 194–195 (2007). "In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Id.* Summary judgment may be granted only when the right to judgment is clear and free of doubt. *Id.*

In the case at bar, the trial court heard oral argument on Manufacturer's summary judgment motion in May 2005, and granted it in October 2005. Initially, the trial court concluded that the Plaintiffs presented evidence that would permit a jury to conclude that the sensors malfunctioned based on the deposition testimony that the sensors failed to respond to the glowing ember. The court noted that this was sufficient under the malfunction theory to present a *prima facie* case for the first element of a strict product liability case: that the product was defective. The court additionally held that the report of Plaintiffs' expert would allow a reasonable jury to find that the failure of the sensors contributed to the explosion and fire, which caused Plaintiffs' injuries, and thus, that Plaintiffs met the second element of a strict product liability claim relating to causation.

The trial court, however, found that Plaintiffs failed to satisfy the third element of a 402A case because they failed to present evidence from which a reasonable jury could conclude that the unspecified defect existed when the sensors left Manufacturer's control when they stipulated that the sensors functioned properly for ten years. The court noted that several other courts applying Pennsylvania law have cited to this Court's decision in *Kuisis* for the quotation of Professor Prosser that, "when there is no definitive evidence [of a defect at time of delivery], and it is only a matter of inference from the fact that something broke or gave way, the continued use usually prevents the inference that the thing was more proba-

bly than not defective when it was sold." Tr. Ct. Op. at 7, (quoting *Kuisis*, 319 A.2d at 923 (quoting Prosser, *The Fall of the Citadel (Strict Liability to the Consumer)*, 50 Minn. L.Rev. 791, 844–45, (1966))).[6] Accordingly, the trial court granted summary judgment to Manufacturer: "I hold the continued successful use of the sensors for ten years precludes a reasonable inference the sensors were defective when they left [Manufacturer's] control." Tr. Ct. Op. at 8.

In January 2007, a three-judge panel of the Superior Court affirmed the trial court's decision in a published opinion. *Barnish v. KWI Bldg. Co.*, 916 A.2d 642 (Pa.Super.2007). The court concluded that Plaintiffs established the first prong of their *prima facie* case by presenting evidence that the sensors malfunctioned. Without specifically addressing the second element of causation, the court then considered the effect of the Plaintiffs' admission that the sensors functioned properly for ten years after leaving the Manufacturer on the third element of a Section 402A claim relating to the existence of a

---

**6.** As discussed in note 2, *Kuisis* was a plurality decision with only two justices joining the relevant portion of that opinion. The applicable part of the lead opinion in *Kuisis* provides as follows:

We recognize that, as a general rule, 'prolonged use of a manufactured article is but one factor, albeit an important one, in the determination of the factual issue whether (a defect in design or) manufacture proximately caused the harm'. The age of an allegedly defective product must be considered in light of its expected useful life and the stress to which it has been subjected. In most cases, the weighing of these factors should be left to the finder of fact. But in certain situations the prolonged use factor may loom so large as to obscure all others in a case. Professor Prosser has summarized the position generally taken by the courts on this question:

(Lapse of time and long continued use) in itself is not enough, even when it has extended over a good many years, to defeat the recovery where there is satisfactory proof of an original defect; but when there is no definite evidence, and it is only a matter of inference from the fact that something broke or gave way, the continued use usually prevents the inference that the thing was more probably than not defective when it was sold.

Were there any direct evidence of a specific defect in the brake locking mechanism at the time of delivery, the age of the crane would not, as a matter of law, defeat liability, but in the absence of such evidence in the record before us, we do not think appellant has made out a case for the jury.

*Kuisis*, 319 A.2d at 923 (internal footnote and citations omitted).

defect at the time the product left the manufacturer's control. The court relied upon this Court's decision in *Kuisis* for the proposition that a jury could not find a product defective at the time of delivery if the product functioned properly prior to the alleged malfunction. The court framed the failure as the Plaintiffs' inability to "present a case-in-chief free of reasonable, secondary causes, *e.g.*, wear and tear from prolonged use, which is necessary to establish a *prima facie* case of product liability under the malfunction theory."[7] *Barnish,* 916 A.2d at 648.

After being granted allowance of appeal by this Court, Plaintiffs argue that the courts below improperly imposed a burden on them at summary judgment to negate the potential secondary cause of wear and tear from the prior ten years of use, when that cause was not present in Plaintiffs' case-in-chief, but instead was proposed by Manufacturer. Plaintiffs assert that they demonstrated a *prima facie* case sufficient to survive summary judgment when they demonstrated: (1) a malfunction, through the circumstantial evidence that the sensor system did not activate in the presence of an ember, and (2) that their theory of the explosion did not suggest any abnormal uses or reasonable secondary causes for the incident.

The Plaintiffs argument is based on the Superior Courts decision in *Dansak,* 703 A.2d at 497,[8] which held that a plaintiff "fails to establish a *prima facie* case only if the plaintiff does not negate evidence of other reasonable, secondary causes or abnormal use that is actually introduced during

7. We note that the term "case-in-chief" is often used to signify the stage of trial where the plaintiff presents its case to the judge or jury. As used here, the term merely distinguishes between the plaintiff's theory of the case in contrast to the defense's theory at the summary judgment stage of the proceedings.

8. In *Dansak,* the plaintiff, a convenience store employee, suffered injury while unloading glass bottles of soda, one of which was broken. The manufacturer asserted that the bottle could have been broken by another employee of the store, such that the bottle would not have been defective at the time of delivery. The Superior Court opined that the plaintiff did not need to refute the manufacturer's theory at the summary judgment stage.

plaintiff's case-in-chief," as opposed to those proposed by the defendants. In this regard, the court in *Dansak* further concluded that summary judgment in a malfunction theory case is "not warranted simply because the defendant hypothesizes (or even presents evidence of) reasonable secondary causes." *Id.*

Plaintiffs also rely upon this Court's decision in *Rogers,* 523 Pa. 176, 565 A.2d 751, 755 (1989), where, as noted *supra,* at 541, this Court adopted the malfunction theory. In *Rogers,* the plaintiff sustained third-degree burns from the cast applied to his broken leg. The plaintiff claimed that the cast was defective; conversely, the defendant manufacturer asserted that the injury was caused by the doctor's malpractice rather than the cast itself. The Superior Court vacated the jury award to the plaintiff, and remanded for a new trial based upon its conclusion that the malfunction theory product liability action should not have gone before the jury once the defense had introduced evidence of physician malpractice. This Court reversed the grant of a new trial, and instead found that a question of fact existed: "[W]e believe that so long as the plaintiffs presented a case-in-chief free of secondary causes which justified the inference of a defect in the product, the jury was free to accept their scenario." *Rogers,* 565 A.2d at 755 (footnote omitted).

Thus, Plaintiffs assert that summary judgment was improper in the case at bar because, under *Rogers* and *Dansak,* they did not have to rebut the Manufacturer's alleged cause of the malfunction at summary judgment in order to present their case to the jury. Instead, Plaintiffs claim that a question of fact existed as to whether the sensors' failure to detect the ember resulted from wear and tear over the ten years of use as suggested by the Manufacturer or resulted from a defect in the sensors as suggested by the Plaintiffs. In addition to urging that *Dansak* and *Rogers* are controlling caselaw, Plaintiffs contend that the trial and Superior courts and the defendants improperly relied upon the decision in *Kuisis* as precedent to allow courts to find that prior successful use is a bar to malfunction theory cases. Plaintiffs observe that only two

judges concluded that twenty years of prior use was sufficient in and of itself to defeat liability under a strict product liability action. Accordingly, Plaintiffs assert that the decision in *Kuisis* does not prevent their case from going to the jury.

Manufacturer counters that the trial court and Superior Court properly required Plaintiffs to adduce some evidence that the alleged defect existed at the time the product left the Manufacturer's control to survive summary judgment. Relying upon *Kuisis* and long-standing principles of summary judgment, the Manufacturer asserts that the Plaintiffs cannot be allowed to rely upon mere speculation to survive summary judgment. As characterized by Manufacturer, the plurality in *Kuisis* opined that years of trouble-free operation of a product renders unreasonable any inference that the product was defective when it left the manufacturer's control.

Manufacturer also relies on the Superior Court's decision in *Woodin v. J.C. Penney Co., Inc.*, 427 Pa.Super. 488, 629 A.2d 974 (1993), involving a freezer that had been used without incident for eight years before the electric cord caught fire. The court in *Woodin* held that a reasonable jury could not conclude that the freezer was defective at the time of delivery when it had functioned properly and continuously for all of those years. Indeed, Manufacturer argues that the continued successful use constitutes dispositive evidence that the product was not defective when it left the Manufacturer's control. Manufacturer also asserts that a product's age (as distinguished from its prior successful use) is an inherent part of every plaintiff's case-in-chief because of a plaintiff's requirement to prove that the defendant manufactured and sold a product that was defective when it left the manufacturer's control. According to Manufacturer, therefore, the plaintiff must rebut the potential alternative cause of wear and tear to create a genuine issue of material fact for a jury and thus to avoid summary judgment. Manufacturer asserts that the purpose of the summary judgment rule is to dispense with cases, such as this, where "a party lacks the beginnings of evidence" to establish or contest a material issue. Brief for Manufactur-

er at 32 (quoting *Ertel v. Patriot News Co.,* 544 Pa. 93, 674 A.2d 1038, 1042 (1996)).

Our scope of review of an order granting summary judgment is plenary. *Atcovitz v. Gulph Mills Tennis Club, Inc.,* 571 Pa. 580, 812 A.2d 1218, 1221 (2002). The trial court's order will be reversed only where the court committed an error of law or clearly abused its discretion. *Id.* Summary judgment is appropriate only where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* (citing Pa.R.C.P. 1035.2). The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Id.*

We granted review in this case to address the issue left unresolved by the plurality in *Kuisis,* regarding the significance of a products prior successful use on a plaintiffs ability to withstand summary judgment in a malfunction theory case. We reject the suggestion that the plurality decision in *Kuisis* is binding. Moreover, we refuse to conclude that the prior successful use of a product, in and of itself, dooms a plaintiff's ability to present a *prima facie* case for strict product liability under the malfunction theory. Instead, we recognize that a product can perform successfully for years and yet still be defective. As but one example, should a product that has a lifespan of twenty years fail after three years of successful use because of shoddy parts, a plaintiff may still be able to prove that the product was defective when it left the manufacturer's control, despite the three years of successful use.

Rather than finding prior successful use to be a conclusive factor in determining summary judgment in a malfunction theory case, we resort to the standard rules of summary judgment set forth above and the elements of a strict liability claim. In order to survive summary judgment, the plaintiff must present evidence to create a question of material fact on each element of the claim. In a strict liability

cause of action, the plaintiff must present evidence of a defect, evidence that the defect caused the injury, and evidence that the defect existed at the time the product left the manufacturer's control. Under the malfunction theory, the plaintiff can demonstrate these elements through circumstantial evidence.

 In this case, the Plaintiffs presented evidence of a malfunction and expert testimony that the malfunction caused the injury sufficient to withstand summary judgment. The Plaintiffs, however, failed to present evidence, circumstantial or direct, that the product was defective at the time it left the manufacturer's control. To the contrary, the Plaintiffs admitted in their brief in opposition to summary judgment that the sensors functioned properly prior to the explosion and fire. Moreover, the Plaintiffs failed to present any explanation as to how the sensors could function properly for ten years and yet be defective at the time the sensors left the manufacturer's control. Accordingly, the Plaintiffs failed to place evidence in the record to create a genuine issue of material fact regarding a necessary element of their claim for strict product liability under Section 402A of the Restatement (Second) of Torts. See Ertel, 674 A.2d at 1042 ("We have a summary judgment rule in this Commonwealth in order to dispense with a trial of a case (or, in some matters, issues in a case) where a party lacks the beginnings of evidence to establish or contest a material issue.").

 Despite the emphasis in the arguments of the parties and the language used in the oft-cited Prosser quotation, see supra at 543, we note that this case does not turn on the whether the resultant wear and tear of the prior years of successful use was a cause of the malfunction or whether that potential wear and tear is part of the Plaintiffs case-in-chief or the Manufacturers theory of the case. Nonetheless, we approve of the result in Kuisis, although for slightly different reasons. Rather than focusing on the potential impact of wear and tear, which will be factually distinct in each case, we conclude that a plaintiffs admission of prior successful use is relevant to the analysis because it is in direct conflict with the

inference to be drawn from the occurrence of a malfunction. We hold that a plaintiffs acknowledgment of prior successful use undermines the inference that the product was defective when it left the manufacturers control.

█ Our holding, however, does not bar all malfunction theory cases involving a product that has functioned in the past and then malfunctions, because such a holding would eliminate the malfunction theory for all cases other than ones where a product malfunctions on its first use. Instead, to survive summary judgment, a plaintiff who admits that the product functioned properly in the past must present some evidence explaining how the product could be defective when it left the manufacturers control and yet still function properly for a period of time.

In short, the Plaintiff has to present a genuine question of fact on this third element of a Section 402A case. For example, in this case, the Plaintiffs could have suggested that while other sensors in the system had functioned properly in the past, the sensors at issue in this fire had never been called into action,[9] or as noted earlier, a plaintiff could also present evidence of a defect at the time of delivery by demonstrating that the product at issue failed before the expiration of its expected lifespan. No such evidence was presented in this case, and accordingly, a reasonable jury would have no basis to find that a defect existed in Manufacturers spark detection system at the time of delivery.

Accordingly, we affirm the decision of the Superior Court, which affirmed the trial courts grant of summary judgment to GreCon Electronics, Inc., the manufacturer of the spark detection system in this case.

9. Indeed, this argument was suggested during oral argument before this Court; however, for purposes of reviewing a trial court's decision on a summary judgment motion, we are limited to the evidence properly before that court. Our review of the filings at the summary judgment stage do not reveal any suggestion that sensors four and five were not involved in the prior successful uses of the system. Instead, the testimony of Plaintiff Barnish suggests just the opposite, *see supra*, at 540.

Justice EAKIN, Justice TODD, Justice McCAFFERY and Justice GREENSPAN join the opinion.

Justice SAYLOR files a concurring opinion in which Chief Justice CASTILLE joins.

Justice SAYLOR, Concurring.

I join the majority opinion, subject to a few modest differences.

Principally, in matters premised upon malfunction theory, I would specifically discontinue the concept of a plaintiff "presenting a case[-in-chief] free from abnormal uses" or secondary causes, Majority Opinion, at 412, 980 A.2d at 541, as I believe this language is ambiguous and fosters gamesmanship.[1] Rather, I would simply align our jurisprudence with the prevailing view that the plaintiff bears the burden of proffering evidence that, if credited, negates reasonable alternative causes of the malfunction. *See* PLAINTIFF'S PROOF OF A PRIMA FACIE CASE § 15:18 (2009); Restatement (Third) of Torts, Products Liability § 3 cmt.d (1998). I would also define the term "reasonable alternative causes" to mean causes that are as or more likely to have resulted in a malfunction, as compared to the possibility of a defect.

The majority references the essential requirement of negating other causes, *see* Majority Opinion, at 411–14, 980 A.2d at 541–42, but declines to apply it in this case. *See id.* at 420, 980 A.2d at 547 (indicating that "this case does not turn on . . . whether the resultant wear and tear of the prior years of

1. For example, in this case, Appellants take the position that, as long as they do not mention any potential alternate causes for the failure of the fire suppression system at the pre-trial stage, apparently no matter how obvious or likely the alternative causes, they are entitled to a jury trial. *See, e.g.,* Brief for Appellants at 9–11. It is a plaintiff's burden, however, to advance a *prima facie* case of product defect, and, as the majority explains, malfunction theory functions merely as a principle channeling the use of circumstantial evidence and does not alter the overall burden allocation. Therefore, in a case in which the plaintiff relies on malfunction theory, where there are alternate causes which appear as or more likely as a possible product defect to have resulted in a malfunction, the plaintiff must address them in order to state a *prima facie* case.

successful use was a cause of the malfunction or whether that potential wear and tear is part of the Plaintiff's case-in-chief or the Manufacturer's theory of the case"). This is my main point of difference, as I believe it was Appellant's burden to address ten years' wear and tear as an obvious possible cause of the malfunction. Indeed, I regard the prolonged-use factor in a malfunction-theory case, which the majority treats as dispositive, and the other-causes aspect, as being integrally interrelated. *Accord Barnish v. KWI Bldg. Co.*, 916 A.2d 642, 648 (Pa.Super.2007) ("Plaintiff/Appellants did not present a case-in-chief free of reasonable, secondary causes, *e.g.*, wear and tear from prolonged use, which is necessary to establish a *prima facie* case of product liability under the malfunction theory."). I also differ with the majority to the degree it suggests that product inactivity or failure during expected lifespan is necessarily sufficient to create a jury issue, *see* Majority Opinion, at 421–22, 980 A.2d at 547–48, since, for example, neither of these circumstances, in and of itself, accounts for the possibility that the system was damaged during its prolonged period of use.[2]

Finally, I note that the majority opinion discusses the requirements for a Section 402A claim, but does not mention the "unreasonably dangerous" requirement. *Compare* Majority Opinion, at 411, 980 A.2d at 541, *with* Restatement (Second) § 402A (1965). In this regard, I merely note that the proper approach to the foundational elements of a strict-liability claim is a subject in current controversy in this Court. *See Bugosh v. I.U. N. Am., Inc.*, 971 A.2d 1228, 1229–49 (Pa.2009) (Saylor, J., dissenting).

Chief Justice CASTILLE joins this concurring opinion.

---

**2.** Because of the multitude of factors that could affect a product during a decade of use, it seems to me that it would be very difficult for a plaintiff to create a jury issue under malfunction theory after such extended period. At a minimum, I believe, the plaintiff would need to present evidence demonstrating how the product was protected from damage, inspected, and maintained throughout the period of its use.