J-S59029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BRENDA A. OWENS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LEHIGH VALLEY HOSPITAL, | |
| Appellee | No. 3780 EDA 2015 |

Appeal from the Order Entered November 24, 2015
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2013-C-2397

BEFORE:  BENDER, P.J.E., OLSON and FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                          **Filed October 5, 2016**

Appellant, Brenda A. Owens, appeals from the November 24, 2015 order, which granted summary judgment in favor of Lehigh Valley Hospital (hereinafter "LVH").  We affirm.

The trial court summarized the relevant factual background and procedural history as follows:

> [Appellant] commenced suit against LVH by [*praecipe*] for writ of summons filed July 8, 2013.  In her one-count second amended complaint, [Appellant] asserted a claim of "wrongful discharge in violation of public policy" alleging that LVH terminated her employment in retaliation for having invoked workers' compensation rights. . . .
>
> LVH filed a motion for summary judgment and asserted that [Appellant] was terminated on March 9, 2011, more than two years prior to the date [Appellant] commenced this action.  Accordingly, LVH argued that [Appellant's] claim was time-barred as a matter of law.  [Appellant] responded that she had no actual knowledge of her termination date and that the discovery rule tolled the running of the statute

*Former Justice specially assigned to the Superior Court.

of limitations until July 13, 2011, the date she received notice that her application for long-term disability benefits was denied.

[Appellant] was employed by LVH as a Sterilizing Technician [and she] began a medical leave of absence on September 10, 2010.

[Appellant] received and read the following letter dated January 21, 2011, from Kathleen Mudri, Disability Counselor:

> You have been out of work on a medical leave of absence since October 4, 2010, and you are receiving short term disability benefits. Your short term disability benefits will end effective April 1, 2011. This may be a good time to begin the application process for long term disability (LTD) benefits if you continue to be disabled. . . .
>
> At this time, you are encouraged to contact your supervisor to advise him/her of your current status and ability to return to work, if you have not done so already. According to [LVH] policy, your position may be posted after 12 weeks (if you qualify for family medical leave) or 60 days (if you do not qualify for family medical leave). Additionally, your employment status with [LVH] will be terminated if your leave of absence or combination of leaves, including family medical leave (FMLA), extends beyond 180 calendar days. . . .

After reading the above letter, [Appellant] noticed that the start date of her medical leave of absence was incorrect. She contacted Ms. Mudri by phone, and advised her that she began her medical leave of absence on September 10, 2010, not October 4, 2010, as stated in the letter.

[Appellant] received a second letter dated February 23, 2011, from Lynn Ryden, Benefits Counselor, which stated in part:

> We are concerned about your current employment status and wish to advise you of our policies regarding your leave of absence.
>
> Our records indicate that you have been on a [leave of absence] since October 4, 2010. According to our policy, if any leave extends beyond 180 days, you will be removed from the payroll. As of April 2, 2011, you will be on a [leave of absence] for 181 days. Therefore, you will be removed from the payroll as of that date. Prior to the 180th day of your leave, you have the option of applying for other available Network positions for which you are qualified and are within any medical restrictions you have. Contact your Human Resources Consultant (HRC) for information on applying for open positions. . . .

[Appellant] received two additional letters. A letter dated March 4, 2011, stated "REVISED" and was identical to the January 21, 2011 letter except the dates in the first paragraph were [corrected to reflect the actual start date of Appellant's leave of absence (September 10, 2010) and the actual end date of Appellant's short-term disability benefits (March 8, 2011)]. . . . [The March 4, 2011 letter] included the language, "your employment status with [LVH] will be terminated if your leave of absence or combination of leaves, including family medical leave (FMLA) extends beyond 180 calendar days.

Similarly, [Appellant] received a "CORRECTION" letter on March 4, 2011, which included the same language as the February 23, 2011 letter, but corrected the [leave of absence] date and the dates that followed from the [leave of absence] date. The letter stated:

> Our records indicate that you have been on a leave-of-absence since September 10, 2010. According to our policy, if any leave extends beyond 180 days, you will be removed from the payroll. As of March 9, 2011, you will be on a leave-of-absence for 181 days. Therefore, you will be removed from the payroll as of that date. Prior to the 180th day of your leave, you have the option of applying for other available Network positions for

which you are qualified and are within any medical restrictions you have.

. . .

[Appellant's employment was then terminated effective March 9, 2011].

During [Appellant's] deposition, she was asked about her understanding of the sentence in the January 21, 2011 letter that stated she would be terminated if her leave of absence extended beyond 180 calendar days; she responded, "[t]hat is what it says, but I didn't understand it to be that." [Appellant's] testimony makes it clear that she believed she was not terminated because she was applying for long-term disability. [Appellant] agreed that her interpretation of the letter was mistaken because she thought the letter was for her short-term disability. When asked about her understanding of the February 23, 2011 letter, [Appellant] testified that she believed the letter only addressed her disability benefits.

[Appellant] was aware in March of 2011 that LVH policy provided for a maximum leave period of 180 days and that employees on a [leave of absence] for more than 180 days would be removed from payroll. Prior to July of 2011, [Appellant] concedes she was informed that she would be removed from payroll if her leave of absence extended more than 180 days. [Appellant] placed one phone call to Kathleen Mudri subsequent to receiving the January 21, 2011 letter in order to alert her that the leave of absence date was incorrect and to discuss benefits. In addition, [Appellant] attempted to contact LVH's CEO by telephone twice in late June/early July "in an attempt to get a review. [Appellant] was rebuffed in these attempts."

Trial Court Opinion, 2/22/16, at 1-4 (internal citations and emphasis omitted) (some internal capitalization omitted). The trial court granted summary judgment in favor of LVH on November 24, 2015. This timely appeal followed.

- 4 -

Appellant presents one issue for our review:

Whether or not the trial court erred by failing to properly apply the discovery rule when it held that [] Appellant had failed to file her lawsuit on a timely basis?

Appellant's Brief at 4.

The scope of review of an order granting summary judgment is plenary. *Barnish v. KWI Bldg. Co.*, 980 A.2d 535, 546 (Pa. 2009). Moreover, we will reverse the trial court's order only if it "committed an error of law or clearly abused its discretion." *Id.* Summary judgment should only be granted when the record clearly demonstrates that there is no genuine issue of material fact and the moving party is thus entitled to judgment as a matter of law. *Id.* We "must view the record in the light most favorable to the nonmoving party [and resolve] all doubts as to the existence of a genuine issue of material fact against the moving party." *Id.* Entry of summary judgment is proper "where the plaintiff fails to plead facts sufficient to toll the statute [of limitations], . . . or admits facts sufficient to admit the limitations defense," or does not present facts sufficient to show there is a genuine issue for trial. *Taylor v. Tukanowicz*, 435 A.2d 181, 183-184 (Pa. Super. 1981).

Appellant claims that she did not have actual knowledge of her termination until July 13, 2011. Appellant's Brief at 11. However, we conclude that the trial court properly held that Appellant was not entitled to application of the discovery rule.

The statute of limitations period for a cause of action is computed from the time the cause of action accrues. 42 Pa.C.S.A. § 5502(a). A cause of action accrues when "the plaintiff could have first maintained the action to a successful conclusion" and accordingly, the statute of limitations period begins to run after the plaintiff acquires the right to maintain a suit. *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) (citations omitted). Generally, the right to bring a tortious cause of action arises when the injury is inflicted. *Id.* Once a cause of action has accrued and the statute of limitations has run, the injured party can no longer bring the cause of action. *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 475 (Pa. 1964). The running of the statute will not be tolled because of mistake, misunderstanding, or lack of knowledge alone. *Id.* However, the discovery rule and the doctrine of fraudulent concealment can act as exceptions to toll the running of a statute of limitations period. *Fine*, 870 A.2d at 858.

In Pennsylvania, the statute of limitations for a wrongful discharge claim is two years. 42 Pa.C.S.A. § 5524(2). Appellant's claim is facially time barred, as her employment with LVH was terminated on March 9, 2011 and she did not file suit until July 8, 2013, approximately four months after the expiration of the two-year statute of limitations. Appellant argues that the discovery rule should apply here. Our Supreme Court has noted:

> The "discovery rule" is [] an exception [to the statute of limitations which] arises from the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause. . . . The salient point giving rise to the equitable application of

- 6 -

the exception of the discovery rule is the inability, despite the exercise of diligence by the plaintiff to know of the injury. A court presented with an assertion of applicability of the "discovery rule" must, before applying the exception of the rule, address the ability of the damaged party, exercising reasonable diligence, to ascertain the fact of a cause of action.

***Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.***, 468 A.2d 468, 471 (Pa. 1983). Where the discovery rule applies, the two-year statute of limitations period begins to run when the plaintiff knew or should have known of the injury and its cause. ***Crouse v. Cyclops Indus.***, 745 A.2d 606, 611 (Pa. 2000). "A party asserting an action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period." ***Pocono Int'l Raceway, Inc.***, 468 A.3d at 471 (internal citations omitted).

Here, the record does not support Appellant's contention that she was unable to know of her injury (her alleged wrongful termination) despite the exercise of reasonable diligence. Appellant admits to having received and read four letters from LVH. Each letter clearly states LVH's policy of termination after 180 days of leave and informed Appellant of the exact date her employment would terminate and she would be taken off payroll if she continued her leave of absence. Even if Appellant thought these letters only pertained to her short-term disability and not her employment, as she claims, she is not entitled to relief. A misunderstanding or lack of knowledge will not toll the running of the statute of limitations. ***Nesbitt***, 204 A.2d at

475. Further, Appellant could have easily discovered the status of her employment. She could have raised the subject of her employment status during her phone call with Ms. Mudri. "If a party has the means of discovery within [her] power but neglects to use them, [her] claim will still be barred." *Burnside v. Abbott Labs.*, 505 A.2d 973, 988 (Pa. Super. 1985), *citing De Martino v. Albert Einstein Med. Ctr. N.D.*, 460 A.2d 295, 303 (Pa. Super. 1983). Even if Appellant were correct in her assertion that she did not know she was terminated, she clearly had the means of discovering her employment status and chose not to do so.

Appellant further contends that a general statement of policy is different than an actual, specific termination letter. Appellant's Brief at 7. However, the letters she received were not just general statements of policy, as they clearly stated that she would be removed from payroll if she did not return to work. Moreover, she did not have to guess as to whether she were fired, as she claims, because she was given the exact date of termination in the March 4, 2011 letter.

Appellant also relies on *Ward v. Rice*, 828 A.2d 1118, 1120 (Pa. Super. 2003) to show the discovery rule should be applied. However, this reliance is misplaced. In *Ward*, the physician repeatedly told a patient that the numbness in her mouth was only a temporary side effect of her surgery to "lull" her into thinking her condition was not permanent. *Id.* Here, LVH

did nothing to make Appellant think she was still employed after the 180 days had passed. Accordingly, **Ward** is not applicable to the case at bar.

"Where [] reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, [a] court [can determine] that the discovery rule does not apply as a matter of law." **Fine**, 870 A.2d at 858-859 (citation omitted). It is clear that Appellant knew of her date of termination or should have known with the exercise of reasonable diligence. Accordingly, the trial court did not err in holding the discovery rule does not apply.[1]

Appellant also argues in her brief that she should be entitled to relief based on the doctrine of fraudulent concealment because she never received a final termination letter from LVH. Appellant's Brief at 13. However, this argument is waived. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). **See Metal Bank of America, Inc. v. Ins. Co. of North America**, 520 A.2d 493, 501 (Pa. Super. 1987), *appeal denied*, 536 A.2d 1332 (Pa. 1987). Appellant

---

[1] Appellant also cites to a Third Circuit Court of Appeals decision for the proposition that the statute of limitations begins to run "only when the employee receives unequivocal notice of the adverse employment decision." **Bailey v. United Airlines**, 279 F.3d 194, 199 (3d Cir. 2002), *citing* **Grayson v. Kmart Corp.**, 79 F.3d 1086, 1100 n.19 (11th Cir. 1996). However, this decision is not binding on this Court. Further, the four letters Appellant received, one of which gave the exact date she would be removed from payroll and terminated, constituted unequivocal notice of her termination.

never brought this issue to the trial court's attention and failed to mention it in her memorandum in opposition of LVH's motion for summary judgment. Accordingly, this issue is waived.[2]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/2016

---

[2] Even if this argument were not waived, it is without merit. All four letters Appellant received clearly stated Appellant would be terminated if she continued her leave. LVH did nothing to deceive her into believing she was still employed or conceal her termination. Even if Appellant misunderstood the meaning of these letters, this is not a basis for tolling the statute of limitations or invoking the doctrine of fraudulent concealment.