J-A03031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE CO., A/S/O GERALD AND MICHELLE THOMPSON AND GERALD AND MICHELLE THOMPSON, INDIVIDUALLY AND GERALD AND MICHELLE THOMPSON AS PARENTS AND NATURAL GUARDIANS OF B.C.T., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | No. 727 MDA 2020 |
| | : : | |
| v. | : : : | |
| | : | |
| SAM'S EAST, INC., D/B/A SAM'S CLUB, SAM'S WEST, INC., D/B/A SAM'S CLUB AND WAL-MART STORES, INC., D/B/A SAM'S CLUB | : : : : | |

Appeal from the Order Entered April 13, 2020
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2017-CV-1430-CV

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.:                **FILED MARCH 19, 2021**

Pennsylvania National Mutual Casualty Insurance Company (Penn National) and Gerald and Michelle Thompson (h/w) (collectively, Plaintiff-Appellants) appeal from the order, entered in the Court of Common Pleas of Dauphin County, granting summary judgment in favor of Sam's East, Inc., et al. (Defendant-Appellees).  Upon review, we reverse and remand for further proceedings.

Plaintiff[-Appellant], [Penn National,] commenced this action by Complaint on February 24, 2017, as subrogees of [the

Thompsons]. The action arises out of a residential fire which occurred at approximately 4 o'clock a.m. on February 28, 2015 at property in which the Thompsons lived [in] Harrisburg[.] The Thompsons seek compensatory damages for bodily injuries alleged to have been sustained due to smoke inhalation from the fire. [Although the] Thompson[s] settled their claims [as to themselves, t]he claims of B.C.T., the Thompsons' son, . . . remain at issue.

Plaintiff[-Appellants] allege that the February 28, 2015 fire was caused by a space heater purchased at Defendant[-Appellee] Sam's East, Inc.['s] store. The Thompsons allege that Defendant[-Appellee] marketed, sold[,] and distributed the electric space heater sometime prior to December 2011. Mr. Thompson's mother purchased the heater and gave it to the Thompsons as a Christmas gift. The Thompson[s] used the heater approximately twenty hours per month during the winter months from December 2011 to February 2015. During that time, the heater operated like new with no concerns, and required no maintenance. The unit came with operating instructions[,] which Mr. Thompson read, but which he no longer had, because they were destroyed in the fire.

Plaintiff[-Appellants] testified that on the evening of February 27, 2015, Mrs. Thompson went to sleep while watching television upstairs in the residence. At around 8:00 p.m., Mr. Thompson and B.C.T. went to the basement to watch a movie, at which point they turned on the space heater. At some point, they fell asleep near the heater. Mr. Thompson believes the heater was operating for four to six hours before he realized a fire started. Mr. Thompson testified that the space heater caught fire and the fire spread . . . ["]to the television.] . . . I threw a blanket over the top of the burning heater, picked it up with my forearms, and [] ran up the stairs carrying it out in the snow." B.T.C. testified that he observed his father screaming as he removed the heater from the basement with a blanket, then took it outside and placed it in a snowbank in order to extinguish the fire.

Trial Court Opinion, 4/13/20, at 1-3.

In support of their product liability claims, Plaintiff-Appellants submitted the expert report of Tyler Schriver, Certified Fire and Explosion Investigator, who conducted an investigation into the cause and origin of the fire in the

Thompsons' residence on March 3, 2015. After physically examining the Thompsons' home, the space heater at issue, and "all additional heat sources within the home," Schriver concluded that: (1) the fire was accidental in nature; (2) the fire originated within the electric space heater and spread laterally throughout the basement; and (3) **all additional heat sources within the home had been eliminated as a cause of the fire**. Schriver Fire Report, 3/5/15, at 1-2 (emphasis added). Schriver's report also included photographs showing that the electric heater's internal mechanisms, including some wiring and a steel fan, had melted or turned to ash.

On May 22, 2017, Defendant-Appellees filed their Answer with New Matter denying the allegations that a defect in the electric space heater caused the February 28, 2015 fire and resulting injuries. On August 23, 2019, Defendant-Appellees filed their motion for summary judgment, and on September 19, 2019, Plaintiff-Appellants filed their response. Following oral argument, which was held on December 18, 2019, the trial court, on April 13, 2020, entered an order granting summary judgment in favor of Defendant-Appellees. The trial court stated that Schriver's expert opinion "fall[s] short of the proof required" to survive Defendant-Appellees' motion for summary judgment in that it was "devoid of identification of the design defect, how any alleged defect caused the heater to catch fire, or identification of what type of safety design should have existed." Trial Court Opinion, 4/13/20 at 7.[1] The

---

[1] The trial court also found it "significant to Plaintiff[-Appellants'] lack of identification of design defect that the heater worked perfectly in the years of

- 3 -

trial court also concluded that "Plaintiff[-Appellants] may not avail themselves of the 'product malfunction' theory [of products liability] . . . [because their] expert examined the product." *Id.* (citing *Dansak v. Cameron Coca-Cola Bottling Co., Inc.*, 703 A.3d 489 (Pa. Super. 1997).

On April 24, 2020, Plaintiff-Appellants filed a motion for reconsideration, which the trial court denied on May 6, 2020. Plaintiff-Appellants timely[2] appealed to this Court and, having complied with Pa.R.A.P. 1925(b), raise the following issue for our review:

> Did the trial court err by disregarding the Plaintiff[-Appellants'] uncontested expert examination and report, and eyewitness testimony, which unequivocally concluded that the origin and source of the house fire was caused by the spontaneous

_____

use since December 2011." Trial Court Opinion, 4/13/20, at 7. However, our Supreme Court has "recognize[d] that a product can perform successfully for years and yet still be defective." *Barnish v. KWI Bldg. Co.*, 980 A.2d 535, 546 (Pa. 2009). "As but one example, should a product that has a lifespan of twenty years fail after three years of successful use because of shoddy parts, a plaintiff may still be able to prove that the product was defective when it left the manufacturer's control, despite the three years of successful use." *Id.*

[2] Plaintiff-Appellants, appealing from the April 13, 2020 order granting summary judgment, filed the instant notice of appeal on May 19, 2020 (36 days later). Generally, a notice of appeal shall be filed within 30 days of the entry of the order from which the appeal is taken. Pa.R.A.P. 903(a). Thus, ordinarily, Plaintiff-Appellants would have had until May 13, 2020 to timely file their notice of appeal. However, on March 17, 2020, in response to the COVID-19 pandemic and in accordance with the Order of the Supreme Court of Pennsylvania declaring a general, statewide, judicial emergency, this Court issued an order staring that "[a]ll timelines imposed by [Pa.R.A.P. 903] for appeals from orders entered between March 13, 2020 and April 17, 2020, that would be subject to the Superior Court's jurisdiction, are EXTENDED by 30 days." Order, 3/17/2020; *see also* 532 Judicial Administration Docket (Mar. 16, 2020). Therefore, Plaintiff-Appellants had until June 12, 2020 to timely file their notice of appeal, and their May 19, 2020 filing was timely.

combustion of the electrical space heater which was being used as intended by the end consumer?

Brief of Appellant, at 2.

Our standard of review of an order granting or denying summary judgment is well-settled:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Siciliano v. Mueller*, 149 A.3d 863, 864 (Pa. Super. 2016).

In *Rogers v. Johnson Products, Inc.*, 565 A.2d 751 (Pa. 1989), the Pennsylvania Supreme Court:

> acknowledged [its] prior adoption of Section 402A of the Restatement (Second) of Torts, providing for "a plaintiff's right to pursue an action in strict liability against the manufacturer of a product." To bring a Section 402A claim, a plaintiff must demonstrate, *inter alia*, that the product was defective, that the defect caused the plaintiff's injury, and the defect existed at the time the product left the manufacturer's control.
>
> [**The *Rogers* Court**] **observed that** in most cases, plaintiffs would produce direct evidence of an alleged defect in the product to establish the required elements of a Section 402A claim[; **i**]**n some instances,** however, **the plaintiff may not be able to prove the precise nature of the defect**[,] **in which case reliance may be had on the 'malfunction' theory of product liability.** This theory encompasses nothing more than circumstantial evidence of product malfunction.
>
> [**T**]**he malfunction theory permit**[**s**] **a plaintiff to prove a defect in a product with evidence of the occurrence of a**

**malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction**.  While reminiscent of the logic of a *res ipsa loquitur* case, the malfunction theory requirements correlate with the three elements of a standard 402A claim.

*Barnish v. KWI Bldg. Co.*, 980 A.2d 535, 541 (Pa. 2009) (emphasis and paragraph breaks added) (internal citations and quotations omitted); *see also Dansak*, *supra* at 495 (under malfunction theory of products liability, plaintiff is relieved of demonstrating precise defect in product, and may prove existence of defect by circumstantial evidence).

Subsequently, in *Dansak*, this Court explained that "in a products liability case[,] the plaintiff seeks to prove, through whatever means he or she has available under the circumstances, that a product was defective when it left the hands of the manufacturer." *Id.* at 496.  The *Dansak* Court clarified that a plaintiff need not identify "a specific defect [or an explanation as to] precisely how the product was defective and how the defect must have arisen from the manufacturer or seller." *Id.* at 496.  Indeed, "[e]ven without expert testimony articulating the specific defect, [the plaintiff] may be able to convince a jury that the product was defective when it left the seller's hands by producing circumstantial evidence."[3] *Id.*

Although the plaintiff need not present direct evidence of a defect, the malfunction theory does not remove a plaintiff's burden of establishing a

_____

[3] "In cases of a manufacturing defect, such expert testimony is certainly desirable from the plaintiff's perspective, but it is not essential." *Dansak*, *supra* at 496.

defect. Instead, "the malfunction is itself circumstantial evidence of a defective condition." ***Id.*** We have previously explained that a plaintiff "proceeding on a malfunction theory[] **may present a case-in-chief** [**by**] **evidencing the occurrence of a malfunction and eliminating abnormal use or reasonable, secondary causes for the malfunction**. From this circumstantial evidence, a jury may be permitted to infer that the product was defective at the time of sale." ***Id.*** (citing ***O'Neill v. Checker Motors Corp.****,* 567 A.2d 680, 682 (Pa. Super. 1989)) (emphasis added).

Contrary to the trial court's interpretation of ***Dansak***, ***see*** Trial Court Opinion, 4/13/20, at 7, that case does not stand for the proposition that plaintiffs who have the benefit of examining their allegedly defective product cannot avail themselves of the "product malfunction" theory. Rather, the ***Dansak*** Court simply noted that the "failure to produce the product is not fatal to [a plaintiff's] claim if she can proceed with circumstantial evidence under a malfunction theory, and [plaintiff] was in no way at fault for disposing or failing to preserve the product." ***Id.*** at 495.

Most recently, in ***Barnish***, ***supra***, our Supreme Court clarified how the "malfunction theory" requirements correlate with the three elements of a standard 402A claim:

> First, **the "occurrence of a malfunction" is merely circumstantial evidence that the product had a defect, even though the defect cannot be identified.** The second element in the proof of a malfunction theory case, which is evidence eliminating abnormal use or reasonable, secondary causes, also helps to establish the first element of a standard strict liability

case, the existence of a defect. **By demonstrating the absence of other potential causes for the malfunction, the plaintiff allows the jury to infer the existence of defect from the fact of a malfunction.** For example, by presenting a case free of abnormal uses, such as using the product for an unintended purpose, the plaintiff can demonstrate that the product failed to perform as a reasonable customer would expect; thus, that it malfunctioned. Similarly, **by eliminating other reasonable secondary causes, a plaintiff allows the jury to infer that a defect in the product caused the malfunction**, as opposed, for example, to operator error or failure to service the equipment. **Similarly, by presenting a case free of "abnormal uses"** by the plaintiff **and free of "other reasonable secondary causes," a plaintiff can establish through inference from circumstantial evidence** the second and third elements of a 402A case, **that the alleged defect caused the injury** (as opposed to another cause) **and that the defect existed when it left the manufacturer's control** (as opposed to developing after the product left the manufacturer's control).

*Id.* at 541 (emphasis added).

In light of this unequivocal precedent, we conclude that the trial court erred as a matter of law in granting Defendant-Appellees' motion for summary judgment with respect to Plaintiff-Appellants' claim of strict liability for a defective product. First, the trial court erroneously concluded that Plaintiff-Appellants could not avail themselves of the product malfunction theory based on the fact that an expert had examined the product. Trial Court Opinion, 4/13/20, at 7. Possessing, retaining, and having an expert examine a product does not preclude a plaintiff from advancing a product malfunction theory of liability. *See Dansak*, *supra*. Second, the trial court misapplied the law in concluding that Plaintiff-Appellants' expert report fell below the standard

required to survive Defendant-Appellees' motion for summary judgment because no precise defect was identified. ***See id.***; ***see also Barnish***, ***supra***.

On a motion for summary judgment, the trial court's task is to determine whether there are controverted issues of fact, not whether the evidence is sufficient to prove the particular facts. ***Troy v. Kampgrounds of America***, ***Inc.***, 581 A.2d 665, 669 (Pa. Super. 1990). As long as a plaintiff presents a case-in-chief to the jury that is free of secondary causes, it is the role of the jury to resolve any disputes in the evidence. ***Id.*** (citing ***Rogers***, ***supra***); ***see also Dansak***, ***supra*** at 497 (plaintiff fails to establish *prima facie* case of product malfunction only if, *based upon his own proof*, **more than one** cause could account for accident) (emphasis added and in original).

The malfunction theory permits a plaintiff, who cannot do so directly, to circumstantially prove that a product is defective by presenting evidence of a malfunction coupled with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction. ***Dansak***, ***supra***; ***Barnish, supra***; ***O'Neill***, ***supra.*** This is precisely what Plaintiff-Appellants submitted to the trial court in this matter: in addition to showing evidence that a malfunction actually occurred, Plaintiff-Appellants' expert report specified that the fire (or malfunction) originated inside the space heater and that **all additional heat sources inside the home were ruled out as possible (or secondary) causes** of the malfunction. ***See*** Schriver Fire Report, 3/5/15, at 1-2 (emphasis added).

"[W]hile a plaintiff may prevail at trial only if [it] eliminates reasonable causes of the accident that are fairly raised by the evidence, it is inappropriate to usurp the function of the jury and rule as a matter of law for defendants at the first sign of an alternate theory of causation." *Dansak*, *supra* at 497-98 (emphasis removed).

Accepting all facts presented by the non-moving parties (here, Plaintiff-Appellants) as true, and granting them the benefit of all inferences therefrom, a jury could reasonably find that the space heater at issue malfunctioned, and that the Plaintiff-Appellants' case-in-chief does not reveal any abnormal use or secondary causes of the accident. Therefore, the trial court's grant of summary judgment was in error. *Dansak*, *supra*; *Troy*, *supra.*

Order granting summary judgment reversed. Case remanded for trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/19/2021

- 10 -